[No. 33763.   Department Two.   May 16, 1957.]

THE CITY OF SEATTLE, *Appellant,* v. MAX J. KUNEY *et al.,*
*Respondents.*[1]

[1]Reported in 311 P. (2d) 420.

*A. C. Van Soelen, Arthur Schramm,* and *A. L. Newbould,* for appellant.

*Rummens, Griffin, Short & Cressman,* for respondents.

*McMicken, Rupp & Schweppe, amicus curiae.*

WEAVER, J.—The city of Seattle appeals from a judgment dismissing its action with prejudice, a demurrer having been sustained to its complaint. The trial court concluded that the action had not been commenced within the time fixed by the written contract of the parties.

The complaint alleges: (1) that defendant copartners entered into a written contract with plaintiff, on or about July 30, 1948, to build a public safety building for plaintiff in accordance with certain plans and specifications made a part of the contract; (2) that the contract and specifications provide for the use of "traditional sand plaster" for plastering said building; (3) that a portion of the contract, designated "Special Notice 2", provides

" '2. Where the words "approved" or "for approval" are used, they shall mean "approved by the architect" and "for the architect's approval". *When the architect approves a substitution, the approval is given with the understanding that the contractor guarantees the substituted article or material to be equal to or better in all respects than the material or article specified.'* " (Italics ours.)

(4) that on November 11, 1949, defendant copartners applied in writing to plaintiff's architects for approval to change the plastering specifications and substitute the use of Perlite light-weight aggregate in place of sand; (5) that the substitution was approved by the architects and, thereafter, Perlite, "known as Dantor light-weight plaster aggregate," was substituted by the defendant copartners in lieu of sand in plastering the building; (6) that the building was accepted and possession taken by plaintiff; (7) that on or about April 5, 1951, final payment was made for the building; (8) that the specifications, which are a part of the contract, provide

" 'Art. 43. Defective Work Discovered Within One Year: The contractor shall make good, without cost to the City

of Seattle, any omissions from his work or negligence in connection therewith, *or any improper materials,* or defective workmanship, or consequences thereof, of which he may in writing be notified within one year of the date of the final payment, but this general guarantee shall not act as a waiver of any specific guarantee for another length of time set elsewhere in this contract.' " (Italics ours.)

(The "another length of time set elsewhere in this contract" refers to a five-year guaranty of the roof and certain exterior metals.) (9) that this provision does not apply to the warranty in "Special Notice 2," quoted *supra*; (10) that on the date of final payment, plaintiff had no knowledge that the substituted material was not adequate for the purpose for which it was intended, nor any knowledge that it was not equal to or better in all respects than the material for which it was substituted, and could not on or before that date, with reasonable diligence, have ascertained it; (11) that the "substituted material" was not and is not equal to or better in all respects than the material specified and for which it was substituted; (12) that the substituted material failed for the purpose for which it was intended, and, by reason of volumetric increase in the plaster, great damage was caused to the building; and (13) that

" . . . the defendant co-partners have long had actual knowledge of the failure of said substituted material and of the damage caused thereby; and that said defendants have disclaimed any responsibility or liability under their warranty that the substituted material would be 'equal to or better in all respects than the material or article specified,' asserting that said warranty has expired under the one-year time limitation set forth in paragraph VIII hereof; that a demand upon defendants to perform their warranty under said contract would therefore be a futile and useless action."

This action was commenced August 8, 1955.

Plaintiff contends the six-year statute of limitations applies to defendants' guaranty that the substituted material is equal to or better than the article specified, as set forth in "Special Notice 2", *supra*; the trial court held that the one-year limitation, found in article 43, *supra*, bars this action.

"The first and best resort in the construction of contracts is to put oneself in the place of the parties at the time the contract was executed—to look at it in prospect rather than retrospect—for, when money disputes have arisen, the perspective is apt to be clouded by the unexpected chance of gain or self-interest." *Carnation Lbr. & Shingle Co. v. Tolt Land Co.,* 103 Wash. 633, 639, 175 Pac. 331 (1918); quoted with approval in *Long-Bell Lbr. Co. v. National Bank of Commerce,* 35 Wn. (2d) 522, 529, 214 P. (2d) 183 (1950).

■■ We are bound by the intention of the parties as expressed in the written contract. We cannot, under the guise of interpretation, rewrite a contract which the parties have deliberately made for themselves. See *Clements v. Olsen,* 46 Wn. (2d) 445, 448, 282 P. (2d) 266 (1955). If a loss occurs, it must fall where the words of the contract put it. We do not find the terms of the contract ambiguous; it clearly sets forth the measure of the parties' obligation.

■ Had defendants used sand in the plaster, as provided by the specifications chosen by plaintiff, and had there been a failure of the plaster by reason of the sand, within one year from payment, defendants would not be liable. They would have used the *proper materials* as specified.

■ When defendants sought and received permission to substitute Perlite for sand, they exercised a privilege given them by the contract; but in doing so, they assumed an additional responsibility: they guaranteed the substitute material "to be equal to or better in all respects than the material or article specified." Had there been a failure of the plaster by reason of the substituted Perlite, within one year from payment, defendants would have been liable (provided written notice had been given within the year), because their warranty would have been breached by the use of "improper materials." Thus, substance is given to "Special Notice 2."

■ The ultimate fact pleaded is that the failure of the plaster resulted from the use of "improper materials." It would stretch the meaning of article 43, *supra,* beyond permissible bounds to say that "improper materials," as used in article 43, means only improper materials substituted by

the contractor *without* permission, but does not include improper materials substituted with *permission*. If such an artificial distinction be recognized, defendants would only be liable for one year for damage resulting from improper materials substituted without permission, and would be liable, under plaintiff's theory, for six years for damages resulting from improper materials substituted with permission. As the trial court remarked: "This unreasonable interpretation was certainly not the intention of the parties."

We agree with the conclusion of the trial court that:

"Numerous provisions of this contract indicate that the parties intended that the contractor's obligation terminated upon the city's acceptance of the work and the contractor's receipt of final payment with the exception of the one year guarantee subsequent to final payment provided in Article 43 of the general conditions and specifications, in the event the contractor receives written notice within one year."

The judgment is affirmed.

HILL, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.

June 27, 1957. Petition for rehearing denied.