[No. 54485-3-I.   Division One.   June 6, 2005.]

1000 VIRGINIA LIMITED PARTNERSHIP, *Appellant*, v. VERTECS CORPORATION, *Respondent*.

---

[21] *Id.*

900

*Linda L. Foreman* and *Jami K. Elison* (of *Martson Heffernan Foreman, P.L.L.C.*), for appellant.

*Steven Jager* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*), for respondent.

¶1 ELLINGTON, A.C.J. — This is an action arising out of water penetration in a new building. Owner and general contractor 1000 Virginia Limited Partnership sued Vertecs Corporation, alleging Vertecs' installation of stucco siding was defective. The only issue here is whether the claim was timely. The trial court held that questions of fact precluded summary judgment on the six-year contract statute of limitations, but that 1000 Virginia had conceded that its sole remedy was a one-year warranty in its contract with Vertecs. The court therefore dismissed the action against Vertecs as untimely. The record does not, however, reflect such a concession, which would in any event be inconsistent with the pleadings and with the contract itself. Whether the claim was timely filed is a question of fact. We reverse.

## FACTS

¶2 Acting as its own general contractor, 1000 Virginia built a four-story apartment complex. Vertecs was the stucco subcontractor, providing labor and materials. Excluded from Vertecs' scope of work were caulking, flashing, and weather protection.

¶3 The certificate of substantial completion was issued on December 31, 1992. Occasional leaks occurred thereafter, and repairs were made to caulking around windows and vents. On January 5, 1994, 1000 Virginia asked Vertecs to inspect and determine whether defects in its work were a source of water intrusion.[1] Vertecs reported its conclusion that caulking had failed at numerous locations and that some dryer vents were not connected to ductwork. Vertecs pointed out that these problems were not within the scope

---

[1] The letter said:

> We have been experiencing leaking on the west and south side of the above referenced project for some time. We are attempting to determine the exact cause. On January 8, 1994, we will be renting a lift to examine the caulking around the windows and the vents.
>
> We believe your company may be responsible for the deficiency. Please contact Ginny . . . to coordinate having your representative be present to view this problem.

Clerk's Papers at 63.

of Vertecs' work on the building.[2] 1000 Virginia repaired the caulking and ductwork.

¶4 Over the next few years, 1000 Virginia experienced other leaks, often coinciding with extreme weather conditions. 1000 Virginia repaired leaks as they occurred. But after a wet winter in 1996, 1000 Virginia observed increased cracks in the stucco and deteriorating drywall under decks. 1000 Virginia undertook more substantial corrective measures, including awnings to shield windows from the weather and a waterproofing system.

¶5 Despite these measures, the leaks increased. By the end of 1998, 1000 Virginia knew there were systemic defects that would require substantial repairs to correct structural damage caused by water intrusion and fungal infestation.

¶6 On September 3, 2002, 1000 Virginia filed a breach of contract lawsuit alleging that defective work by several subcontractors led to water intrusion and damage to the building. Defendants included Vertecs, waterproofing contractor Accountable Waterproofing, and framing contractor Northern States Construction.

¶7 During 2003, the various defendants filed motions seeking summary judgment. Vertecs filed a motion contending the six-year statute of limitations began to run on December 31, 1992, when the certificate of substantial completion was issued. 1000 Virginia contended its action was timely filed within six years of discovery of the elements of its cause of action, under *Architectonics Construc-*

---

[2] Vertecs' report to 1000 Virginia stated as follows:

After walking the building it was apparent that the caulk had failed at numerous locations. Caulking was not within our scope of work.

It was also mentioned by the manager that the dryer vents had been previously inspected by your people and it was found that in many instances they were not connected to the duct work. The gaps between the duct work and the vents were as much as four inches. This is also a high potential area for leaks. In my opinion the vents also need to have covers put on them to protect them from the wind.

Clerk's Papers at 64.

*tion Management, Inc. v. Khorram*[3] (applying the discovery rule to actions for breach of contract). Vertecs responded that the discovery rule should not apply because the alleged defects were observable at all times after construction was complete and, in the alternative, that even if the discovery rule applied, the limitations period began to run when 1000 Virginia became aware of leaks and water damage in the building in 1994. Accountable Waterproofing joined Vertecs' motion to the extent that Vertecs argued the discovery rule did not apply. The court denied the motion "with prejudice,"[4] and clarified its ruling as follows:

1. The Court rules as a matter of law that for this case, the discovery rule is applicable to the statute of limitations defense.

2. There is a genuine issue of material fact regarding when the Plaintiffs discovered or should have discovered evidence sufficient to commence the statute of limitations.[5]

¶8 Thereafter, Accountable Waterproofing filed a motion for summary judgment, arguing first that even if the discovery rule applied, 1000 Virginia's claims accrued more than six years before suit was filed and, in the alternative, that the discovery rule did not apply because a recently enacted statute abrogates the rule in construction cases and applies retroactively. Accountable Waterproofing also argued that if 1000 Virginia's cause of action did not accrue until a specific defect was actually detected, the claims against Accountable Waterproofing were barred by the six-year statute of repose. Vertecs joined in the motion, which was denied.

¶9 Accountable Waterproofing then filed a second motion for summary judgment, arguing the two-year warranty provision in its contract with 1000 Virginia was the exclusive remedy for defective construction. The court denied this motion also.

---

[3] 111 Wn. App. 725, 737, 45 P.3d 1142 (2002).

[4] Clerk's Papers at 246.

[5] Clerk's Papers at 249.

¶10  In late 2003, the lawsuit was assigned to a different judge. In early 2004, Vertecs filed a motion for summary judgment contending the one-year guaranty in Vertecs' contract was 1000 Virginia's sole remedy and that the claim was barred by the doctrines of waiver, estoppel, and/or laches. Northern States filed its own motion, asserting the same equitable defenses and arguing that the only conclusion a reasonable juror could make is that 1000 Virginia should have discovered the defects giving rise to claims against Northern States in 1993. Accountable Waterproofing joined in the motions on grounds of laches, waiver, and estoppel.

¶11  The court ruled the equitable defenses did not apply and that a question of fact existed as to when 1000 Virginia should have known its damages were connected to each defendant. The court thus denied the motions, except as to Vertecs, ruling that 1000 Virginia had made fatal concessions in oral argument:

> Plaintiff conceded during argument that the breach of warranty applied to defendant Vertecs Corporation, thereby limiting any claim to one year after completion of the project. Further, plaintiff concedes that it sent a letter complaining of the damages specific to Vertecs Corporation in 1994, thereby limiting any claim to within one-year of the letter's date. Therefore, the claim against Vertecs Corporation is barred by the terms of the contract and the one-year limitation.[6]

The court dismissed 1000 Virginia's claims against Vertecs and denied its motion for reconsideration.[7]

¶12  1000 Virginia appeals. Vertecs cross-appeals,[8] contending that the court should have dismissed the action as

---

[6] Clerk's Papers at 931.

[7] 1000 Virginia settled with the other defendants.

[8] Vertecs contends a provision in the Standard Form of Agreement Between Owner and Architect contract, incorporated by reference into its subcontract, compels dismissal because it provides that all causes of action accrue upon substantial completion. Vertecs did not present this theory below until its reply brief. "It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary

barred by the statute of limitations or equitable defenses and that either ground provides an independent basis to affirm dismissal.

## ANALYSIS

¶13 We apply the usual standard of review on summary judgment.[9]

¶14 In granting Vertecs' motion,[10] the court relied on two "concessions" made by 1000 Virginia in oral argument: first, that a one-year limited guaranty provision in the subcontract constituted 1000 Virginia's sole remedy, and second, that the 1994 letter was a complaint about Vertecs' work. The court concluded the one-year limitation period began to run when the letter was sent and dismissed the action against Vertecs.

¶15 The court misinterpreted counsel's comments, which must be understood in the context of the parties' contracts. In its contract to do the stucco work, Vertecs guaranteed its material and workmanship for one year from date of final completion: "[D]efects directly attributable to this Subcontractor . . . shall be removed and re-

---

judgment. Allowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." *White v. Kent Med. Ctr., Inc., P.S.*, 61 Wn. App. 163, 168, 810 P.2d 4 (1991). We decline to address this argument.

[9] CR 56(c); *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000).

[10] As a preliminary matter, 1000 Virginia contends Vertecs violated King County Local Rule (KCLR) 7(b)(6) by reapplying, before a different judge, for relief earlier denied, without acknowledging the previous motion and justifying the need for a new ruling. But the previous motion in question was, insofar as it argued the exclusivity of the warranty remedy, made by Accountable Waterproofing, not Vertecs. 1000 Virginia cites no authority for its contention that Vertecs' failure to join in that motion compromised its ability to raise the same issue. KCLR 7(b)(6) does not prohibit a subsequent motion by a different party. *See Foster v. Carter*, 49 Wn. App. 340, 343, 742 P.2d 1257 (1987) (interpreting a former version of the local rule). While we are sensitive to the waste of judicial time, we note that the two contracts were not identical. The trial court properly rejected this argument.

placed solely at Subcontractor's own expense."[11] Vertecs also agreed to "warrant his materials and workmanship for a period of one year from the date of completion and acceptance of the entire work or such longer period of time as may be required by the MAIN CONTRACT."[12] The "main contract" between the parties contained a general warranty of quality work free from defects. This warranty had no time limitation.[13] The main contract also contained a correction of work provision, under which Vertecs agreed to correct any defects discovered within one year.

¶16 These are separate undertakings. Confusion arises because of the common tendency to use the term "warranty" to refer both to contractual obligations and to the separate promise represented by the guaranty. 1000 Virginia sued only on the general warranty of work free of defects and did not (for obvious reasons) assert a breach of the one-year guaranty, which Vertecs could not have breached because Vertecs was not asked to make repairs within the year following completion.

¶17 In oral argument on the summary judgment motion, in answer to the court's query as to why 1000 Virginia had not asked Vertecs to repair the problem in 1998, counsel pointed out that after the one-year guaranty period had passed, 1000 Virginia had no right to demand that Vertecs return and make repairs: "They are past the warranty period. They have no obligation to come out."[14]

¶18 Further, counsel acknowledged that a problem with dryer vents was discovered in 1994, but pointed out that no part of 1000 Virginia's breach of contract claim against Vertecs related to dryer vents. He did not concede the 1994 letter ascribed water intrusion damage to Vertecs, and by its plain language it does not.

---

[11] Clerk's Papers at 58.

[12] Clerk's Papers at 62.

[13] Vertecs agreed to be bound by all provisions of the main contract. *See* Clerk's Papers at 865.

[14] Report of Proceedings (RP) (May 21, 2004) at 25.

¶19 The court erred in granting summary judgment upon the basis that plaintiff's counsel conceded grounds for dismissal.

¶20 This court can affirm, however, on any basis supported by the record.[15] Vertecs makes several arguments for affirmance.

¶21 *One-Year Warranty*. Vertecs first contends the one-year warranty is indeed exclusive.[16] But this question was resolved to the contrary in *Graoch Associates #5 Ltd. Partnership v. Titan Construction Corp.*,[17] in which we held a one-year warranty was not an exclusive remedy for defective construction and did not bar a breach of contract claim because there was no suit limitation provision in the construction contract. *Graoch* is dispositive.[18] The language here is nearly identical. No suit limitation appears in the parties' contracts, and the main contract provides that the one-year time limits apply only to the specific undertakings:

> The establishment of the time periods noted in Subparagraph 13.2.2 [one year] or such longer period of time as may be prescribed by . . . any warranty required by the Contract Documents, relates only to the specific obligation of the Contractor to correct the Work, and has no relationship to the time within which the Contractor's obligation to comply with the Contract Documents may be . . . enforced, nor to the time within which

[15] *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 435, 13 P.3d 622 (2000) ("Because our review is de novo, we are free to premise our holding affirming summary judgment on an issue not decided by the trial court.").

[16] Vertecs points out that the main contract uses the term "contractor" rather than "subcontractor," and argues the obligations created under the main contract therefore do not apply to subcontractor Vertecs. This contention is specious. Vertecs agreed to be bound by the main contract, and agreed "to assume toward the CONTRACTOR, so far as the SUBCONTRACT WORK IS CONCERNED, all the obligations and responsibilities which the CONTRACTOR assumed toward the OWNER." Clerk's Papers at 836, 841.

[17] 126 Wn. App. 856, 866, 109 P.3d 830 (2005).

[18] Vertecs' reliance on *City of Seattle v. Kuney*, 50 Wn.2d 299, 311 P.2d 420 (1957) is misplaced. There, the court held that the contract expressed the parties' intent to limit the contractor's liability for all defects to a one-year period. *Id.* at 303. But there was no general warranty in the contract. *Kuney* is inapposite.

proceedings may be commenced to establish . . . liability with respect to the Contractor's obligations other than specifically to correct the Work.[19]

¶22 The one-year limitation period has no bearing on the breach of contract claims made here.

■ ¶23 *Discovery Rule.* Vertecs next argues the trial court erred in applying the discovery rule and finding a question of fact as to when 1000 Virginia's cause of action accrued. In *Architectonics Construction Management, Inc. v. Khorram,*[20] this court held the discovery rule applies in actions for breach of contract. Under the rule, a cause of action accrues and the statute of limitation begins to run when a party discovers, or in the exercise of reasonable diligence should have discovered, the facts giving rise to the claim.[21]

¶24 Vertecs argues the discovery rule applies only where the injury is inherently undetectable. In *North Coast Enterprises, Inc. v. Factoria Partnership,*[22] a window wall system began to leak shortly after construction was complete. Although the building owner initially believed the problem was minor, extensive leaking developed over time, and the owner hired a forensic engineering firm to inspect the building. The window wall system was found to be defective. The owner asserted a breach of contract claim six and a half years after construction was complete,[23] arguing the discovery rule applied because the defects were latent. We did not reach the question of applicability of the discovery rule because the circumstances did not support

---

[19] Clerk's Papers at 877.

[20] 111 Wn. App. 725.

[21] *Id.* at 728.

[22] 94 Wn. App. 855, 974 P.2d 1257 (1999).

[23] Actually, the claim was asserted more than seven years after construction was complete, but the parties had entered into a tolling agreement that preserved any claims that were not already time-barred as of approximately six and a half years after substantial completion.

its application. In reaching that conclusion, we observed that the alleged injury was "not inherently undetectable."[24]

¶25 In *Architectonics*, homeowners found bubbling and peeling paint and rotted molding five years after construction was complete. They hired a contractor who discovered extensive dry rot in the walls, which was later determined to have been ongoing since construction was complete. The homeowners sued the builder seven years after the completion date but less than two years after they discovered the alleged breach. We applied the discovery rule and held the lawsuit timely.[25]

¶26 We did not characterize the defects in *Architectonics* as "inherently undetectable," and we now observe that this phrase does not have the meaning Vertecs wishes to ascribe to it. For the discovery rule to apply, the breach must have been undiscovered (latent) and the plaintiff must show he or she reasonably failed to discover it (the "knew or should have known" test). The phrase "not inherently undetectable" as used in *North Coast* means only that the plaintiff failed the "should have known" test as a matter of law, making the discovery rule irrelevant.

¶27 Vertecs next contends the defects in 1000 Virginia's building are like the defective window system in *North Coast*, because 1000 Virginia knew its building was leaking within one year of substantial completion. But in *North Coast*, the leaks occurred in precisely the part of the building later determined to have been defectively constructed. By contrast here, 1000 Virginia observed leaks around improperly caulked windows and unattached ductwork and dryer vents. 1000 Virginia has presented evidence that it did not discover defects in the stucco until 1997 or 1998 and that it could not have done so.[26] Further, in *North Coast* there was only one potentially responsible

---

[24] *N. Coast*, 94 Wn. App at 860.

[25] *Architectonics*, 111 Wn. App. at 737.

[26] Vertecs claims 1000 Virginia's chief evidence on this point was not part of the record on the summary judgment motion. But the expert's declaration was submitted in response to Vertecs' first motion for summary judgment in May 2003,

contractor. Here, there were several subcontractors whose work may have contributed to the water intrusion.

¶28 Taking the evidence in the light most favorable to 1000 Virginia, there is a material issue of fact regarding when 1000 Virginia knew, or should have known, its injury was connected to Vertecs' work. The trial court did not err in so holding.

■ ¶29 *Equitable Grounds.* Vertecs argues the equitable doctrines of waiver, estoppel, and laches bar 1000 Virginia's claims because it knew there were leaks in the building as early as 1993, and by 1998 knew there were significant defects leading to water intrusion and damage, yet waited to file its lawsuit until 2002. The same questions of fact that preclude summary judgment based on the discovery rule make summary judgment based on these equitable doctrines improper.[27]

¶30 *Statutory Abrogation of Discovery Rule in Construction Defect Cases.* One year after *Architectonics* was decided, the legislature prohibited application of the discovery rule in construction cases. Under the new statute, codified

---

and was resubmitted with 1000 Virginia's motion for reconsideration. *See Shellenbarger v. Brigman*, 101 Wn. App. 339, 346, 3 P.3d 211 (2000) (trial court may consider additional evidence offered after decision on summary judgment but before a formal order has been entered).

Vertecs also argues the declaration constitutes improper testimony on an ultimate legal question. But while the expert states his opinion regarding whether 1000 Virginia should have discovered the construction defects in 1994, he also states the reasons for his opinion, including the undetectable nature of some of the defects. It was within the trial court's discretion to consider the declaration.

[27] *See Mike M. Johnson, Inc. v. Spokane County*, 150 Wn.2d 375, 391, 78 P.3d 161 (2003) (waiver implied by conduct requires an act unequivocally evidencing an intent to waive); *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992) (equitable estoppel requires a statement or act inconsistent with a claim later asserted, reasonable reliance on the statement or act, and injury to the party who relied if the court allows the party to contradict or repudiate the statement or act); *Somsak v. Criton Techs./Heath Tecna, Inc.*, 113 Wn. App. 84, 93, 52 P.3d 43, *opinion modified*, 63 P.3d 800 (2002) (laches bars cause of action if plaintiff knew or should have known the facts giving rise to the claim, plaintiff delayed in bringing the claim, and the defendant was prejudiced by the delay).

as RCW 4.16.326(1)(g),[28] an action for construction defects must be filed within six years of substantial completion of construction, regardless of discovery.[29] Vertecs claims the benefit of the new statute.

■■■ ¶31 The general rule is that statutes of limitation and the like, including statutes providing exceptions to those limitations, are given prospective application only.[30] Although " '[l]imitation laws pertain only to the remedy and may be changed at the pleasure of the legislature, . . . such laws will not be given a retroactive effect unless it appears that such was clearly the legislative intention.' "[31] When the legislature enacts a shortened statute of limitations, the time frame for bringing claims that accrued before the new law's enactment begins to run on the new statute's effective date.[32]

¶32 Nothing in RCW 4.16.326 or its legislative history suggests that the legislature, merely because it disapproved of the discovery rule in construction defect cases, intended for the statute to become effective and be applied other than in accordance with these general principles. 1000 Virginia filed its lawsuit on September 3, 2002. RCW 4.16.326(1)(g) was enacted on April 21, 2003 and became effective on July 27, 2003.[33] RCW 4.16.326(1)(g) thus be-

---

[28] The statute provides that in construction contract actions, "the applicable contract statute of limitations expires, regardless of discovery, six years after substantial completion of construction."

[29] *See* FINAL BILL REPORT on S.H.B. 2039, 58th Leg., Reg. Sess (Wash. 2003) (noting that "[r]ecent court of appeals decisions have applied the 'discovery' rule to cases involving alleged breaches of construction contracts"; also noting that with the discovery rule, a builder is exposed to liability for approximately 12 years, while it is exposed to liability for only 6 years without the discovery rule). *See also* H.B. REPORT on S.H.B. 2039, 58th Leg., Reg. Sess. (Wash. 2003) (bill has broad support because it creates greater certainty for insurers).

[30] *See, e.g., O'Donoghue v. State*, 66 Wn.2d 787, 790, 405 P.2d 258 (1965); *Lane v. Dep't of Labor & Indus.*, 21 Wn.2d 420, 423, 151 P.2d 440 (1944).

[31] *O'Donoghue*, 66 Wn.2d at 791 (quoting *Hanford v. King County*, 112 Wash. 659, 661, 192 P. 1013 (1920)).

[32] *Merrigan v. Epstein*, 112 Wn.2d 709, 717, 773 P.2d 78 (1989).

[33] LAWS OF 2003, ch. 80, § 1.

came effective approximately 10 months *after* 1000 Virginia filed its claim.

¶33 Although statutory amendments generally apply prospectively, they will be applied retrospectively if the legislature so intended, or the amendment is curative, or the amendment is remedial.[34] A statutory amendment is curative if it clarifies or technically corrects an ambiguous statute.[35] A statute is remedial if it relates to practice, procedure, or remedies and does not affect a substantive or vested right.[36] Nothing indicates the legislature intended the statute to be retroactive. Vertecs contends that Substitute House Bill (S.H.B.) 2039 was intended to be applied retroactively because it is curative and remedial in nature, relying upon *McGee Guest Home, Inc. v. Department of Social & Health Services.*[37]

¶34 In *McGee*, certain amendments to the Administrative Procedure Act, chapter 34.05 RCW, were held retroactive. The court observed that amendments are often applied retroactively if the legislature acted " 'during a controversy regarding the meaning of the law' "[38] because the legislature's timing reflects its intent to cure or clarify a statute.[39] The amendment at issue was expressly intended to clarify an ambiguity in the prior statute. The *McGee* court therefore concluded the amendment was curative and was intended to be retroactive. Here, there is nothing in the legislative history of S.H.B. 2039 indicating an intent to clarify an ambiguity in the law, nor is there any apparent ambiguity to clarify. Nor was the amendment remedial. While the statute relates to remedies, the cause of action accrued before the statute was enacted. Rather, the legis-

---

[34] *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324-25, 12 P.3d 144 (2000).

[35] *Id.* at 325.

[36] *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984).

[37] 142 Wn.2d 316, 12 P.3d 144 (2000).

[38] *Id.* at 325 (quoting *Tomlinson v. Clarke*, 118 Wn.2d 498, 511, 825 P.2d 706 (1992)).

[39] *Id.*

lature chose to reject application of the discovery rule in construction cases. In addition, the *McGee* court was not addressing a new statute of limitations; precedent clearly disfavors the retroactive application of a change in the limitations period.

¶35 In *Merrigan v. Epstein*,[40] the Supreme Court clarified the procedural status of legislative changes affecting statutes of limitations:

> "It has been broadly stated that statutes of limitations are to be given prospective application only. However, the matter is not that simple. An examination of the opinions show that statutes of limitations are acknowledged to be procedural and are retroactively applied, but are given special treatment. More accurately stated, *the rule is that the new limitations law operates retroactively on causes of action which accrued prior to the change in law, but the new period of limitations starts to run from the effective date of the statute which makes the change.*"[41]

¶36 We conclude RCW 4.16.326(1)(g) does not bar 1000 Virginia's claim.

## CONCLUSION

¶37 The trial court erred when it dismissed 1000 Virginia's claims against Vertecs on summary judgment, and we reject the arguments advanced by Vertecs to uphold the dismissal on other grounds.

¶38 Reversed and remanded for further proceedings.

BECKER and APPELWICK, JJ., concur.

Review granted at 156 Wn.2d 1016 (2006).

---

[40] 112 Wn.2d 709, 773 P.2d 78 (1989).

[41] *Id.* at 717 (quoting Lewis H. Orland & David F. Stebing, *Retroactivity in Review: The Federal and Washington Approaches*, 16 GONZ. L. REV. 855, 881-82 (1981)).