[Nos. 77362-9; 77846-9.   En Banc.]
Argued May 16, 2006.     Decided November 9, 2006.

1000 VIRGINIA LIMITED PARTNERSHIP, *Respondent*, v. VERTECS
CORPORATION, *Petitioner*.

CARL A. LOMBARDI, *Respondent*, v. JTE CONSTRUCTION, INC.,
*Petitioner*.

*David J. Bierman* (of *Alexander & Bierman, P.S.*) and *Steven Jager* and *Marianna Valasek-Clark* (of *Jager Law Office, P.L.L.C.*), for petitioners.

*Linda L. Foreman* and *Jami K. Elison* (of *Marston & Heffernan, P.L.L.C.*); *J. Robert Leach* (of *Anderson Hunter Law Firm, P.S.*); and *Linda M. Youngs* and *Magnus R. Andersson* (of *Hanson Baker Ludlow Drumheller, P.S.*), for respondents.

*Robynne T. Parkinson* and *Douglas R. Roach* on behalf of Associated General Contractors of Washington, amicus curiae.

*Todd C. Hayes* and *Thomas F. Ahearne* on behalf of Ballard Square Condominium Owners Association, amicus curiae.

*Eileen I. McKillop* on behalf of Dynasty Construction Company, amicus curiae.

¶1 MADSEN, J.— In these consolidated cases, the trial courts dismissed actions for breach of construction contracts as untimely. The Court of Appeals reversed in each case, holding that the discovery rule applies to determine when a cause of action accrues for breach of a construction contract and that material issues of fact exist as to when the plaintiffs discovered their causes of action. The Court of Appeals also held that RCW 4.16.326, which provides an affirmative defense, does not apply retroactively. The defendant construction companies challenge the Court of Appeals' holdings that the discovery rule applies and that RCW 4.16.326 is not retroactive. We affirm the Court of Appeals.

## FACTS

¶2 In *1000 Virginia Limited Partnership v. Vertecs Corp.*, 127 Wn. App. 899, 112 P.3d 1276 (2005), 1000 Virginia, acting as its own general contractor, built an apartment complex. 1000 Virginia hired subcontractor Vertecs Corporation to do the stucco work. Vertecs was not responsible for caulking, flashings, and weather protection. On December 31, 1992, the certificate of substantial completion was issued. Occasional leaks occurred, and in early 1994 1000 Virginia asked for Vertecs' presence during inspection of windows and vents. Following inspection, Vertecs concluded that caulking had failed in several areas and that some dryer vents were not connected to ductwork. Vertecs said these problems were not within the scope of its work. 1000 Virginia repaired the caulking and ductwork. Leaks continued over the next few years, and after a wet winter in 1996, 1000 Virginia noted increased cracks in the stucco and deterioration in drywall

under decks. 1000 Virginia took further corrective action. Despite 1000 Virginia's efforts to resolve the problems, by the end of 1998, 1000 Virginia knew substantial repairs were required to correct systemic defects that led to structural damage resulting from water intrusion and fungal problems.

¶3 On September 3, 2002, 1000 Virginia brought a breach of contract action against several of its subcontractors, including Vertecs, claiming that defective work led to the water intrusion and resulting damage to the apartment complex. A number of motions for summary judgment were subsequently filed, including a motion by Vertecs based on expiration of the statute of limitations. 1000 Virginia maintained, however, that the discovery rule applied under *Architechtonics Construction Management, Inc. v. Khorram*, 111 Wn. App. 725, 45 P.3d 1142 (2002), *review denied*, 148 Wn.2d 1005 (2003), where the Court of Appeals, Division One, adopted the discovery rule in a construction contract case. Ultimately, although the trial court held that the discovery rule applied, the action against Vertecs was dismissed on the basis that 1000 Virginia had conceded that a shorter limitations period applied under the parties' contract and this period had expired.

¶4 The Court of Appeals reversed, first holding that 1000 Virginia did not concede application of the shorter contractual period and that in any event the contractual limitation period did not apply. Then the Court of Appeals held that the discovery rule applies and that material facts remain as to when 1000 Virginia knew or should have known its injury was connected to Vertecs' work. The court also rejected Vertecs' contention that RCW 4.16.326(1)(g) applies retroactively. This provision sets out an affirmative defense to a breach of construction contract claim, providing that the statute of limitations runs at the expiration of six years from the date of substantial completion or from

the termination of services listed in RCW 4.16.300,[1] whichever is later, regardless of discovery. The Court of Appeals declined to address Vertecs' claims that 1000 Virginia's action was barred by the equitable doctrines of waiver, estoppel, and laches on the ground that questions of fact precluded summary judgment based on these defenses. *1000 Virginia*, 127 Wn. App. 899.

¶5 In *Lombardi v. JTE Construction, Inc.*, noted at 129 Wn. App. 1031, 2005 Wash. App. LEXIS 2424, Carl Lombardi contracted with JTE Construction, Inc., for construction of a residence. The house was substantially complete in August 1995. Thereafter, Lombardi noticed cracks in the siding and leaks in the roof requiring substantial repair work. JTE claims the defects were discovered in 1996, while Lombardi contends he discovered the defects in 1997 or 1998. On July 11, 2003, Lombardi filed suit against JTE, alleging breach of the parties' written construction contract. In August 2004, JTE moved for summary judgment of dismissal. The trial court granted the motion on the ground that RCW 4.16-.326(1)(g) applies retroactively and bars Lombardi's suit. The trial court denied JTE's motion for attorney fees pursuant to the parties' contract, which provides for attorney fees and costs to a prevailing party in a breach of contract action.

¶6 The Court of Appeals reversed in an unpublished per curiam opinion, basing its decision on its opinions in *1000 Virginia* and *Architechtonics*. The court declined to address

---

[1] RCW 4.16.300 concerns actions or claims arising from construction, alteration, repair, design, planning, survey, engineering, etc., of improvements upon real property, and states:

RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property. This section is specifically intended to benefit persons having performed work for which the persons must be registered or licensed under RCW 18.08.310, 18.27.020, 18.43.040, 18.96.020, or 19.28.041, and shall not apply to claims or causes of action against persons not required to be so registered or licensed.

Lombardi's claim for attorney fees pursuant to the parties' contract, leaving the question of attorney fees for the trial court pending the outcome of trial.

¶7 The defendants' petitions for review were consolidated and granted. The Associated General Contractors of Washington, Dynasty Construction Company, and Ballard Square Condominium Owners Association have filed amici curiae briefs.

## ANALYSIS

¶8 In addressing whether a statute of limitations has run on an action arising out of construction or repair of an improvement on real property, both the relevant statute of limitations and the statute of repose set out in RCW 4.16.310[2] must be considered. RCW 4.16.310 is a six-year statute of repose that applies to actions arising out of the construction of a building.[3] As this court has explained, statutes of repose are "of a different nature than statutes of limitation." *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 211, 875 P.2d 1213 (1994). "A statute of limitation bars plaintiff from bringing an already accrued claim after a specific period of time. A statute of repose terminates a right of action after a

---

[2] RCW 4.16.310 concerns actions or claims arising from construction, alteration, repair, design, planning, survey, engineering, etc., of improvements upon real property—accrual and limitations of actions or claims, and provides in relevant part:

All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. The phrase "substantial completion of construction" shall mean the state of completion reached when an improvement upon real property may be used or occupied for its intended use. Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred: PROVIDED, That this limitation shall not be asserted as a defense by any owner, tenant or other person in possession and control of the improvement at the time such cause of action accrues. The limitations prescribed in this section apply to all claims or causes of action as set forth in RCW 4.16.300 brought in the name or for the benefit of the state which are made or commenced after June 11, 1986.

[3] This statute has been called the "builders statute of repose."

specified time, even if the injury has not yet occurred." *Id.* at 211-12 (citations omitted). Accordingly, this court has said, "RCW 4.16.310 requires a 2-step analysis for computing the accrual of a cause of action arising from the construction, alteration, or repair of any improvement to real property. First, the cause of action must accrue within 6 years of substantial completion of the improvement; and second, a party then must file suit within the applicable statute of limitation, depending on the type of action." *Del Guzzi Constr. Co. v. Global Nw. Ltd.*, 105 Wn.2d 878, 883, 719 P.2d 120 (1986).

¶9 To illustrate the effect of the statute of repose, if, for example, a negligence claim against a contractor arising out of the construction of a building does not accrue until seven years after substantial completion, it is barred by RCW 4.16.310 because it did not accrue within the six-year period of the statute of repose. On the other hand, if the negligence action accrues five years after substantial completion of construction of a building, and therefore the claim is not barred by the statute of repose, the claim then must be brought within the limitations period for a negligence claim—generally within three years of accrual of the cause of action—and the action therefore would have to be brought before the end of eight years after substantial completion.

¶10 Statutes of limitations do not begin to run until a cause of action accrues. RCW 4.16.005. Usually, a cause of action accrues when the party has the right to apply to a court for relief. *Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 219, 543 P.2d 338 (1975); *Lybecker v. United Pac. Ins. Co.*, 67 Wn.2d 11, 15, 406 P.2d 945 (1965). In many instances an action accrues immediately when the wrongful act occurs, but in some circumstances where the plaintiff is unaware of harm sustained, a "literal application of the statute of limitations" could "result in grave injustice." *Gazija*, 86 Wn.2d at 220. To avoid this injustice, courts have applied a discovery rule of accrual, under which the cause of action accrues when the plaintiff discovers, or in the reasonable

exercise of diligence should discover, the elements of the cause of action. *Green v. A.P.C.*, 136 Wn.2d 87, 95, 960 P.2d 912 (1998). This does not mean that the action accrues when the plaintiff learns that he or she has a legal cause of action; rather, the action accrues when the plaintiff discovers the salient facts underlying the elements of the cause of action. *Id.*

¶11 In each of these cases, the plaintiffs brought suit under a discovery rule theory of accrual, in accord with the Court of Appeals decision in *Architechtonics*, 111 Wn. App. at 737, that "[t]he statute of limitation for contract actions begins to run when a party knows or, in the exercise of due diligence should know, of the other party's breach."

¶12 The defendant contractors, Vertecs and JTE, contend that the Court of Appeals' decision in *Architechtonics* and application of the discovery rule in these two cases is erroneous in light of precedent from this court holding that accrual of a contract action occurs on breach of the contract. As the defendants maintain, this court has consistently held that accrual of a contract action occurs on breach. *Schwindt v. Commonwealth Ins. Co.*, 140 Wn.2d 348, 353, 997 P.2d 353 (2000); *Safeco Ins. Co. v. Barcom*, 112 Wn.2d 575, 583, 773 P.2d 56 (1989); *Taylor v. Puget Sound Power & Light Co.*, 64 Wn.2d 534, 537-38, 392 P.2d 802 (1964); *McCoy v. Stevens*, 182 Wash. 55, 58-60, 44 P.2d 797 (1935), *overruled on other grounds by Samuelson v. Freeman*, 75 Wn.2d 894, 901, 454 P.2d 406 (1969), *and Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969), *superseded by statute*, RCW 4.16.350, *as recognized in Winbun v. Moore*, 143 Wn.2d 206, 214 n.3, 18 P.3d 576 (2001); *Cornell v. Edsen*, 78 Wash. 662, 663-65, 139 P. 602 (1914), *overruled on other grounds by Peters v. Simmons*, 87 Wn.2d 400, 552 P.2d 1053 (1976).

¶13 In *Architechtonics*, the Court of Appeals opined that this court had never considered when the statute of limitations begins to run in a contract action if reasonable diligence would not reveal the breach. *Architechtonics*, 111 Wn. App. at 730. The court noted that Washington courts

had extended the discovery rule to a number of types of cases over the preceding 30 years and that the legislature had incorporated discovery rules into several statutes of limitations. *Id.* at 731-33. The Court of Appeals also said that this court had "expanded the discovery rule beyond tort cases," citing *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 745 P.2d 1284 (1987), where the court applied the discovery rule in an action for breach of the implied warranty of habitability, and *U.S. Oil & Refining Co. v. Department of Ecology*, 96 Wn.2d 85, 633 P.2d 1329 (1981), where the court had applied the discovery rule in an action involving penalties for the illegal discharge of pollutants. *Architechtonics*, 111 Wn. App. at 733, 731.

¶14 Additionally, the Court of Appeals addressed *Taylor*, which states that a contract cause of action accrues on breach and not on discovery. *Taylor*, 64 Wn.2d at 538 (quoting *Cornell*, 78 Wash. at 664). The Court of Appeals said that *Taylor* was decided five years before the discovery rule was adopted in *Ruth*, 75 Wn.2d 660 (a medical malpractice claim arising out of a sponge left in the plaintiff's body after surgery), and *Ruth* explicitly overruled *Lindquist v. Mullen*, 45 Wn.2d 675, 277 P.2d 724 (1954), on which the court relied in *Taylor*. Finally, the Court of Appeals characterized *Taylor* as involving unknown damages rather than unknown breach.

¶15 The Court of Appeals' reasoning in *Architechtonics* is flawed in several respects. In a number of early breach of contract cases involving claims of professional malpractice, the plaintiffs tried to bring their claims as fraud claims because the statute of limitations for fraud claims included a statutory discovery rule. These claims were rejected on the basis that accrual of the action occurred at the time of breach of contract.[4] *See, e.g., Cornell*, 78 Wash. at 665 ("like any other action founded upon a breach of duty imposed either by law or *contract*, the action arises out of the breach, and the statute of limitations *begins to run from the time of*

---

[4] Professional malpractice actions are now generally considered as negligence actions.

*the breach and not from the time of its discovery*" (emphasis added)); *accord McCoy*, 182 Wash. at 58-60.

¶16 The court's attempt to distinguish *Taylor* is also unpersuasive. In *Taylor* this court said that "[r]unning of the statute of limitations against the breach of contract . . . is not postponed by the fact that the actual or substantial damages did not occur until a later date." *Taylor*, 64 Wn.2d at 538 (citing *Lindquist*, 45 Wn.2d 675). Thus, the Court of Appeals' characterization in *Architechtonics* of *Taylor* as involving unknown damages rather than an "unknown breach" is simply inaccurate. In *Taylor*, we clearly rejected a discovery rule approach to the contract action, just as this court had in earlier cases, adding that the fact that damages did not occur until later did not postpone running of the limitations period. *Id.*

¶17 Finally, the fact that the court in *Taylor* cited *Lindquist*, which was subsequently overruled by *Ruth*, does not undercut the court's holding in *Taylor* that a contract action accrues on breach. When *Ruth* overruled *Lindquist*, it did so insofar as the statute of limitations "applies to the type of medical malpractice claims arising out of the leaving of foreign bodies or substances in a surgical wound." *Ruth*, 75 Wn.2d at 667. *Ruth* did not touch on *Lindquist*'s holding that contract actions accrue on breach.

█ █ ¶18 Because controlling precedent held that a claim arising out of a contract accrued on breach and not on discovery, the Court of Appeals lacked authority to adopt the discovery rule in *Architechtonics*. A decision by this court is binding on all lower courts in the state. *Fondren v. Klickitat County*, 79 Wn. App. 850, 856, 905 P.2d 928 (1995). When the Court of Appeals fails to follow directly controlling authority by this court, it errs. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). Thus, in adopting the discovery rule in *Architechtonics* and failing to follow controlling decisions of this court, the Court of Appeals erred.

█ ¶19 It follows that the Court of Appeals application of the discovery rule in the cases now before us was also erroneous. Nonetheless, application of the discovery rule in

construction contract cases involving latent defects that the plaintiff would be unable to detect at the time of breach is a logical and desirable expansion of the discovery rule. We are persuaded that the rule should apply to contract claims involving latent construction defects.

¶20 "In determining whether to apply the discovery rule, the possibility of stale claims must be balanced against the unfairness of precluding justified causes of action." *U.S. Oil*, 96 Wn.2d at 93; *Gunnier v. Yakima Heart Ctr., Inc.*, 134 Wn.2d 854, 860, 953 P.2d 1162 (1998). A court must consider the goal of the common law "to provide a remedy for every genuine wrong" while recognizing, at the same time, that "compelling one to answer stale claims in the courts is in itself a substantial wrong." *Ruth*, 75 Wn.2d at 665.

¶21 There is little to distinguish a case involving latent defects in a building and a case where a surgical instrument is left in the plaintiff's body during surgery. In both cases, the plaintiff may have no way of knowing that a cause of action exists, i.e., no way of knowing the facts that show that the construction contract was breached in the first case or that a duty of care was breached in the latter. Just as a patient may lack the ability to know that a surgical sponge has been left in place which causes serious harm, so too an unsuspecting homeowner may lack the ability to know that an inferior product was used, such as a type of siding, which results in significant damage. Cases in which courts have applied a discovery rule of accrual (either by statute or common law) include situations where structural defects in the plaintiffs' home were allegedly caused by improper site preparation and subsequent land settling, *Boghossian v. Ferland Corp.*, 600 A.2d 288 (R.I. 1991); where roof trusses were installed that were inadequate to support the load, with resulting settling of a clerestory structure causing damage to roofing and posing a danger of collapse, *McKinley v. Willow Constr. Co.*, 693 P.2d 1023 (Colo. Ct. App. 1984); where gas lines leaked and were unsafe, *Matusik v. Dorn*, 157 Ariz. 249, 756 P.2d 346 (Ct. App. 1988); where the contractor did not use corrosive resistant nails to install

roofing, which began to fail nine years later with the result that shingles began falling off, *Agustin v. Dan Ostrow Constr. Co.*, 64 Haw. 80, 636 P.2d 1348 (1981); and where plaintiffs alleged that improper felt underlayment and faulty roof design led to leaks in the roof, perimeter walls, and foundation, *Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 620 A.2d 428 (1993). In each of these cases, the defect was of a kind that the average homeowner would simply never know or have reason to know of the defect or that it would cause detectable damage years later.

¶22 The court in *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984) reversed summary judgment in favor of the defendants, applying a discovery rule of accrual to the plaintiff-homeowner's multiple claims of faulty construction and design leading to damage. The court reasoned the discovery rule should apply because a person who has arranged for construction and design of his residence (there, an addition) "must undoubtedly rely upon the professional skills of those hired to perform the work. As a lay person, he is most likely without the requisite knowledge to determine whether the room has been properly designed or constructed." *Id.* at 1202. The court added that expecting such a person to hire "yet another professional to oversee the work as it is performed" is unreasonable. *Id.* These problems are exacerbated when the defect is latent. *Id.*

¶23 Under such circumstances, it is unfair to permit a defendant to escape responsibility for shoddy construction simply because the cause of action is based on contract rather than a tort theory. In addition, it is more equitable to place the burden of loss on the party best able to prevent it, i.e., the contracting party who could avoid breaching the contract. Thus, the same fairness considerations weigh in favor of applying the discovery rule to construction contract actions where latent defects are alleged as weigh in favor of the rule in negligence actions.[5]

[5] We note that courts in other jurisdictions are split over whether the discovery rule should apply in contract actions, including construction contracts, but the modern trend is toward applying a discovery rule in contract cases. *See generally*

¶24 Of course, a plaintiff cannot ignore notice of possible defects. The discovery rule requires that "when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered." *Green*, 136 Wn.2d at 96. A person who has notice of facts that are sufficient to put him or her upon inquiry notice is deemed to have notice of all facts that reasonable inquiry would disclose. *Id.* (citing *Hawkes v. Hoffman*, 56 Wash. 120, 126, 105 P. 156 (1909)). Whether the plaintiff should have been able to detect defects (and presumably demand that they be remedied before the structure is accepted) involves a fact question that may be resolved against the plaintiff. Thus, if a plaintiff in a construction contract case inspects as construction proceeds, voluntarily or as a matter of contractual obligation, or is placed on inquiry notice of harm during construction, these facts will bear on whether the plaintiff should have discovered the cause of action.

¶25 Vertecs argues, however, that this court has recognized the need for certainty and predictability in the contract setting and these concerns weigh against applying the discovery rule in cases involving actions on construction contracts. Relying on *Berschauer/Phillips Construction Co. v. Seattle School District No. 1*, 124 Wn.2d 816, 826-27, 881 P.2d 986 (1994) (economic loss rule necessary in order to avoid tort liability for parties who had contractually allocated risks of loss), Vertecs argues that the parties to construction contracts rely on statutes of limitations and the rule that a contract action accrues at breach in allocating risks. Vertecs contends that changing accrual rules undermines the certainty and predictability of allocated risks of loss and bargained-for liability exposure. In a

*Architechtonics*, 111 Wn. App. at 734-36 (citing cases); *Bauman v. Day*, 892 P.2d 817, 827-28 (Alaska 1995) (citing cases); Sonja Larsen, Annotation, *Modern Status of the Application of "Discovery Rule" to Postpone Running of Limitations Against Actions Relating to Breach of Building and Construction Contracts*, 33 A.L.R.5th 1 (1995).

similar vein, amicus Associated General Contractors contends that availability and cost of insurance are significant concerns where a discovery rule of accrual applies.

¶26 Similar arguments applied and similar concerns were raised when the discovery rule was first applied in the case of negligence actions, but the benefits of applying the rule outweigh the burdens. We believe the same is true in the case of construction contracts. We hold that the discovery rule applies in the case of actions for breach of construction contracts where latent defects are alleged.

¶27 The defendants contend though that the legislature has explicitly rejected the discovery rule in construction contract claims. We recognize that the legislature has the authority to enact statutes of limitations and the authority to determine whether a discovery rule should apply in a particular context. *See generally Ruth*, 75 Wn.2d at 666. For example, in 1988 the legislature adopted the discovery rule for tort claims based on childhood sexual abuse in response to this court's rejection of the rule in this context in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986). Here, the legislature has enacted an affirmative defense precluding application of a discovery rule for claims of breach of written construction contracts. RCW 4.16.326(1)(g). But if the defendant fails to plead RCW 4.16.326(1)(g) as an affirmative defense, then the discovery rule of accrual can apply to delay accrual of a cause of action even on a written construction contract.

¶28 We note that the affirmative defense in RCW 4.16.326(1)(g) applies to terminate the statute of limitations six years after substantial completion or termination of services listed in RCW 4.16.300, whichever is later. It may be that most construction contracts are written contracts with a six-year statute of limitations, *see* RCW 4.16.040(1), but parties can enter an oral contract for new construction, remodel, or repair. If they do so, the discovery rule may apply because the statute of limitations for an oral contract is three years. RCW 4.16.080(3). A latent defect could be discovered more than three years but less

than six years after substantial completion. Notably, RCW 4.16.326(1)(g) does not say that the discovery rule does not apply to construction contracts, as most of the parties and amici before the court seem to think. It says, instead, that the statute of limitations will expire "regardless of discovery." RCW 4.16.326(1)(g).

¶29 The next issue raised in these consolidated cases is whether RCW 4.16.326(1)(g) applies retroactively.

¶30 RCW 4.16.326 provides in relevant part:

(1) Persons engaged in any activity defined in RCW 4.16.300 may be excused, in whole or in part, from any obligation, damage, loss, or liability for those defined activities under the principles of comparative fault for the following affirmative defenses:

. . . .

(g) To the extent that a cause of action does not accrue within the statute of repose pursuant to RCW 4.16.310 or that an actionable cause as set forth in RCW 4.16.300 is not filed within the applicable statute of limitations. In contract actions the applicable contract statute of limitations expires, regardless of discovery, six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later.

RCW 4.16.326(1)(g).[6]

¶31 Although the parties and amici debate whether RCW 4.16.326(1)(g) is a statute of limitations or a statute of repose, it appears to be neither. It does not alter the period of repose set out in RCW 4.16.310. Instead, it states that the "applicable contract statute of limitations expires, regardless of discovery," at the end of the same six year period

---

[6] The concern underlying enactment of RCW 4.16.326(1)(g) was that "[w]ithout the discovery rule, the breach and therefore accrual would occur at the time of completion of construction; i.e., presumably nearer the beginning of the statute of repose—giving a builder a total period of exposure to liability that tends to be closer to six years." H.B. Rep. on Substitute H.B. 2039, at 2, 58th Leg., Reg. Sess. (Wash. 2003). However, "[w]ith the discovery rule, the discovery of the breach and therefore accrual might occur at the end of the statute of repose—giving a total period of builder exposure to liability that tends to be closer to 12 years." *Id.*

set out in the statute of repose. RCW 4.16.326(1)(g). And, while the statute states an absolute end to the limitations period as an affirmative defense, it does not itself establish any limitations period. Instead, RCW 4.16.326(1)(g) simply identifies a point at which the "applicable" limitations period expires, without identifying what that limitations period is.

¶32 Regardless of how the statute is characterized, it is presumed to run prospectively, as are all statutes. *Wash. Waste Sys., Inc. v. Clark County*, 115 Wn.2d 74, 78, 794 P.2d 508 (1990). However, a statute or an amendment to a statute may be retroactively applied if the legislature so intended, if it is clearly curative, or if it is remedial, provided that retroactive application does not " 'run afoul of any constitutional prohibition.' " *McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324-25, 12 P.3d 144 (2000) (quoting *State v. Cruz*, 139 Wn.2d 186, 191, 985 P.2d 384 (1999) (citing *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992)))).

¶33 The contractors argue that the statute is curative. An enactment " 'is curative only if it clarifies or technically corrects an ambiguous statute.' " *McGee*, 142 Wn.2d at 325 (quoting *F.D. Processing*, 119 Wn.2d at 461). Intent to clarify a statute may be manifested by the legislature's enactment of new legislation soon after a controversy arose about interpretation of the statute said to be clarified. *McGee*, 142 Wn.2d at 325; *Johnson v. Continental W., Inc.*, 99 Wn.2d 555, 559, 663 P.2d 482 (1983). A curative amendment will not be given retroactive application if it contravenes a judicial construction of the statute that is clarified or technically corrected because of separation of powers considerations. *F.D. Processing*, 119 Wn.2d at 461; *Johnson v. Morris*, 87 Wn.2d 922, 926, 557 P.2d 1299 (1976).

¶34 There is no question that this provision was adopted in response to *Architechtonics* and the Court of Appeals' holding that a discovery rule applies to contract actions. The Final Bill Report for Substitute House Bill 2039 states

that "recent court of appeals decisions have applied the 'discovery' rule to cases involving alleged breaches of construction contracts." H.B. REP. on Substitute H.B. 2039, at 2, 58th Leg., Reg. Sess. (Wash. 2003). JTE contends that the legislature "clarified the statutes of limitations and repose in construction cases as codified in RCW 4.16.300 through RCW 4.16.320 and cured the new judicially-created 12-year statute of limitations for some construction contract cases created by" *Architechtonics*. JTE Construction's Pet. for Review at 10.[7] Vertecs maintains that the "statute of limitations for breach of a written contract was six years from the date of the breach. This changed with the *Architechtonics* ruling. The Legislature immediately clarified the new found ambiguity regarding the application of the statute." Vertecs Corp.'s Pet. for Review at 15. Vertecs adds that the legislature had the right to cure ambiguity resulting when "the Court of Appeals misinterpreted the statute and applied the discovery rule to breach of contract." *Id.*

¶35 RCW 4.16.326(1)(g) does not clarify any statute. It does not alter the statute of repose, RCW 4.16.310, as mentioned. It does not clarify any ambiguity in any statute of limitations pertaining to construction contracts; i.e., it does not purport to change RCW 4.16.040(1) or RCW 4.16.080(3), which provide the six-year limitations period for written contracts and the three-year limitations period for oral contracts, respectively. Rather than clarifying an ambiguous statute, RCW 4.16.326(1)(g) prevents application of the discovery rule of accrual in the case of written construction contracts. This rule of accrual was not set out in any statute, nor did the Court of Appeals in *Architechtonics* purport to construe any statute.[8] Rather, the

---

[7] In JTE's Response to Appellant's Brief and Cross-Brief at 7, JTE says that in *Architechtonics* the Court of Appeals "judicially amended RCW 4.16.310 by applying a 'discovery rule' to certain construction contracts."

[8] Lombardi contends that the Court of Appeals in *Architechtonics* construed the statute of repose, RCW 4.16.310, and its construction relates back to the date of enactment of the statute in 1967. Therefore, Lombardi maintains, the court simply declared what the law had always been. This argument finds no support in

Court of Appeals' determination in *Architechtonics* that the discovery rule should apply was made "as a matter of judicial policy." *See U.S. Oil*, 96 Wn.2d at 92 (observing that when this court has adopted the discovery rule in a particular context, it has done so "as a matter of judicial policy").

¶36 Vertecs argues, however, that there must have been ambiguity because prior to 2002, the cases did not apply a discovery rule to breach of construction contract cases. However, when a court adopts a discovery rule of accrual for a particular kind of action, it does so because it is persuaded that a "literal application of the statute of limitations" could "result in grave injustice." *Gazija*, 86 Wn.2d at 220. The fact that a court decides that the discovery rule should apply is not based on a finding of ambiguity in a limitations statute. In short, the new legislation is intended to undo judicial adoption of a discovery rule for construction contracts,[9] not to clarify an ambiguous statute.

¶37 Vertecs also argues that the statute is remedial, citing *O'Donoghue v. State*, 66 Wn.2d 787, 791, 405 P.2d 258 (1965), for the proposition that a limitations statute is remedial. 1000 Virginia argues, however, that the statute cannot be applied retroactively as a remedial provision because retroactive application of RCW 4.16.326(1)(g) would affect its vested rights in its accrued, filed cause of action.

¶38 "A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." *Miebach v. Colasurdo*, 102 Wn.2d 170, 181, 685 P.2d 1074 (1984). "[S]tatutes affecting vested rights will be construed as operating prospectively only." *O'Donoghue*, 66 Wn.2d at 790. Abolition of a statutory cause of action does not impair any vested right. *West v.*

*Architechtonics*, however. The court did not "construe" the repose statute. The plaintiffs in both cases maintain that RCW 4.16.326(1)(g) cannot be applied retroactively because to do so would contravene a judicial construction of statutes, i.e., *Architechtonics*. Again, because the Court of Appeals did not construe any statute when it determined that the discovery rule should be applied for contract actions, this principle does not apply.

[9] But, as explained, by its terms the new enactment leaves room for application of a discovery rule in the context of oral contracts. RCW 4.16.326(1)(g).

*Zeibell*, 87 Wn.2d 198, 202, 550 P.2d 522 (1976); *Haddenham v. State*, 87 Wn.2d 145, 149, 550 P.2d 9 (1976). However, an accrued cause of action is a vested right when it " 'springs from contract or from the principles of the common law.' " *Robinson v. McHugh*, 158 Wash. 157, 163, 291 P. 330 (1930) (emphasis omitted) (quoting *Pritchard v. Norton*, 106 U.S. 124, 132, 1 S. Ct. 102, 27 L. Ed. 104 (1882)).

¶39 Under these principles, RCW 4.16.326(1)(g) does not apply retroactively as a remedial statute because such application would affect the plaintiffs' accrued causes of action arising from their contracts.

¶40 Next, JTE contends that RCW 4.16.326(1)(g) should be applied retroactively in order that the parties be returned to the "status quo" existing before *Architechtonics* was decided. JTE maintains that the statute of limitations expired in *Lombardi* prior to the time that *Architechtonics* was filed, and prior to Lombardi's bringing his cause of action. JTE says it has a vested right in the expiration of the statute of limitations, relying on *Lane v. Department of Labor & Industries*, 21 Wn.2d 420, 151 P.2d 440 (1944), for the proposition that where a statute of limitations is amended by changing the period of limitations, the amendment does not revive barred claims.[10]

¶41 The discovery rule does not alter the statute of limitations. It is, as explained, a rule for determining when a cause of action accrues and the statute of limitations commences to run. Thus, even if there is a vested right in the running of a statute of limitations, this right would not

---

[10] Whether there might be a vested right in the running of a statute of limitations depends on the nature of the cause of action. *Compare, e.g., State v. Hodgson*, 108 Wn.2d 662, 667-68, 740 P.2d 848 (1987) (a defendant has a vested right in expiration of a statute of limitations for the time in which a criminal charge may be brought, once it has run) *with, e.g., Herr v. Schwager*, 145 Wash. 101, 258 P. 1039 (1927) (a debtor did not acquire a vested right not to pay an obligation because of expiration of the statute of limitations, and the legislature's passage of an act that removed the bar of the statute of limitations permitted institution of a cause of action for payment of the debt).

Vertecs made a similar argument in briefing to the Court of Appeals, i.e., that it had a vested right in the running of the statute of limitations, but cited no authority in support of the proposition.

be at issue when a rule defining the time of accrual is at issue, rather than a change in the statute of limitations. Therefore, we do not accept JTE's argument that RCW 4.16.326(1)(g) should be applied retroactively to return the parties to the position they were in before *Architechtonics*.

¶42 We add that when we have adopted the discovery rule for accrual of a cause of action in a particular context, we have applied the rule in the case in which it was adopted, even though the statute of limitations otherwise would have expired. *E.g.*, *Ruth*, 75 Wn.2d 660 (discovery rule for medical malpractice claims resulting from leaving foreign substances or objects in a surgical wound); *Peters*, 87 Wn.2d 400 (discovery rule for attorney malpractice); *Gazija*, 86 Wn.2d 215 (discovery rule applies to negligent cancellation of an insurance policy); *U.S. Oil*, 96 Wn.2d 85 (discovery rule applies for imposition of penalties for discharge of illegal pollutants). We have also applied the discovery rule of accrual to other cases pending when the case adopting the discovery rule was decided. *E.g.*, *Fraser v. Weeks*, 76 Wn.2d 819, 456 P.2d 351 (1969) (applying the discovery rule adopted in *Ruth* and reversing on appeal a grant of summary judgment of dismissal based on running of the statute of limitations). In accord with these cases, and based on the considerations underlying the discovery rule, we apply the discovery rule that we here adopt to these cases.

¶43 Next, Vertecs challenges the Court of Appeals' holding that there are issues of material fact in *1000 Virginia* precluding summary judgment. Vertecs contends that 1000 Virginia knew of its damage in 1994, expressly claimed it was due to Vertecs' conduct, and chose its own repair course over time. Thus, Vertecs says, 1000 Virginia should have discovered its cause of action in 1994 because there was notice of leaks and thus of the breach. However, Vertecs itself contended in 1994 that leaks were due to improper caulking and unconnected ductwork that was not within the scope of its work. Therefore, we do not agree that evidence of the leaks in 1994 is sufficient to support Vertecs'

claim that as a matter of law 1000 Virginia discovered or should have discovered its cause of action against Vertecs in 1994.

¶44 Vertecs alternatively argues that if the question is whether 1000 Virginia knew, or should have known, that its injury was connected to Vertecs' work, as the Court of Appeals said, then 1000 Virginia's suit is barred by the statute of repose because there is no admissible evidence that 1000 Virginia knew that its injury was connected to Vertecs' work until 2002 when it hired experts to determine the cause of the leaks and decided to bring suit. However, as the Court of Appeals noted, 1000 Virginia presented evidence that it discovered defects in the stucco, which was within the scope of Vertecs' work, in 1997 or 1998. *1000 Virginia*, 127 Wn. App. at 910. Although Vertecs challenges some of 1000 Virginia's evidence on this question, both the trial court and the Court of Appeals properly concluded that factual issues preclude summary judgment on the question when 1000 Virginia discovered its cause of action.

¶45 The Court of Appeals declined to address Vertecs' arguments that the equitable doctrines of estoppel, waiver, and laches bar 1000 Virginia's suit. The court reasoned that issues of material fact preclude summary judgment based on these asserted defenses. We agree.

¶46 Finally, in *Lombardi*, the Court of Appeals declined to award attorney fees as requested by JTE, leaving the issue to the trial court to decide following trial. The parties' contract states that "[i]n the event either of the parties breaches the terms of this Contract or its obligations hereunder, the prevailing party shall be entitled to attorney fees and costs incurred in enforcing the terms of this Contract." Clerk's Papers at 347. At this stage of proceedings, there has been no determination that a party breached the contract, nor has there been a determination of "prevailing party" status. The Court of Appeals' decision on this issue is therefore correct.

## CONCLUSION

¶47 Because the Court of Appeals is bound to follow precedent established by this court and this court's precedent established that a cause of action for breach of contract accrued upon breach rather than discovery, the Court of Appeals erred in adopting the discovery rule in *Architechtonics*. However, we agree that the discovery rule should apply to actions on construction contracts involving allegations of latent construction defects and therefore adopt the rule for such actions. Accordingly, we hold that the discovery rule applies in these cases. We affirm the Court of Appeals' holdings that material issues of fact preclude summary judgment in both cases. We also affirm the Court of Appeals' holdings that RCW 4.16.326(1)(g) does not apply retroactively. These cases are remanded for trial.

C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

¶48 J.M. JOHNSON, J. (dissenting) — This court has long held that contract actions accrue on breach of the contract, not when the breach is (claimed) discovered. This rule reflects both the legislature's determinations and our common law of contracts. The rule is reasonable and justified by the uniqueness of contractual settings. Construction contracts provide for inspection by the owner (as well as government inspectors) before acceptance of a project. If a contract has been breached, the owner can ask specific performance—repair—other than damages. The owner, through the contract, can determine the quality and specifics of construction—and pay a higher or lower price.

¶49 Today, the majority wrongly declares a new rule:[11] that construction contract actions accrue on discovery of the problem (and accepts incredible claims of years-belated discovery of defects in housing).

---

[11] As noted below, this rule is temporary, as the legislature has confirmed the old rule.

¶50  In so doing, the majority sets aside our stare decisis rules and disdains legislative intent, while promulgating a new rule of contract law that runs contrary to the background expectations of contracting parties. By imposing a discovery rule sometimes appropriate for torts to these construction contracts, the majority fails to comprehend the bases for this court's prior respect for distinction between tort and contract. The majority then incorrectly decides that legislation clarifying the rule that contract actions accrue on breach does not apply. The majority finally errs by applying its discovery rule to these two cases of long-belated contract claims.

¶51  While repudiating the decision of Division One of the Court of Appeals in *Architechtonics Construction Management, Inc. v. Khorram*, 111 Wn. App. 725, 45 P.3d 1142 (2002), *review denied*, 148 Wn.2d 1005, 602 P.3d 1212 (2003) as contrary to decisions of this court, the majority adopts its analysis. Both the decision and policy rationale should be rejected.

¶52  I would reverse the Court of Appeals in *1000 Virginia Limited Partnership v. Vertecs Corp.*, 127 Wn. App. 899, 112 P.3d 1276 (2005) except insofar as that court concluded that genuine issues of material fact preclude summary judgment. I would also reverse the Court of Appeals in *Lombardi v. JTE Construction, Inc.*, noted at 129 Wn. App. 1031, 2005 Wash. App. LEXIS 2424. Both courts below wrongly applied the discovery rule to actions on contracts and allowed claims which the Washington State Legislature has required be filed within specified years of the breach. Therefore, I dissent.

## ANALYSIS

### Statute of Repose and Statute of Limitations

¶53  Construction contract claims must comply with both the statute of repose and the statute of limitations. A statute of repose terminates a right of action after a specified period of years (often six) after completion of contract performance.

*Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 211-12, 875 P.2d 1213 (1994). The statute of repose set out in RCW 4.16.310 provides, in pertinent part:

> All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. . . . Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred.

This reflects the fact that six years is sufficient time to find a contract breach, and recognizes that construction deteriorates over years and that proof of construction error becomes speculative after many years.

¶54 Once a contract cause of action accrues, a statute of limitations begins to run, requiring filing of a legal action within a specified period. RCW 4.16.005. Under a statute of limitations, the plaintiff must file suit within the appropriate time frame (often six years for written contracts). RCW 4.16.040. The statute of limitations bars the plaintiff from bringing an action in court after the specified time.

¶55 This court has previously summarized how the statute of repose and statute of limitations interact:

> RCW 4.16.310 requires a 2-step analysis for computing the accrual of a cause of action arising from the construction, alteration, or repair of any improvement to real property. First, the cause of action must accrue within 6 years of substantial completion of the improvement; and second, a party then must file suit within the applicable statute of limitation, depending on the type of action.

*Del Guzzi Constr. Co. v. Global Nw. Ltd.*, 105 Wn.2d 878, 883, 719 P.2d 120 (1986).

Contract Actions Accrue on Breach

¶56 Washington's long-standing rule for contracts is that accrual of an action occurs upon breach of the contract, regardless of when the breach is discovered (hereinafter the "breach rule"). *Taylor v. Puget Sound Power & Light Co.*, 64 Wn.2d 534, 537-38, 392 P.2d 802 (1964). *See also N. Coast Enters., Inc. v. Factoria P'ship*, 94 Wn. App. 855, 859, 974 P.2d 1257 ("Our courts have consistently held that the statute of limitation in a contract action begins to run when the contract is breached."), *review denied*, 138 Wn.2d 1022, 989 P.2d 1137 (1999).

¶57 A contrary rule applies in tort actions; a victim of a violation of a duty owed to him or her may sue after discovery of the injury.

¶58 In 2003, the Court of Appeals decision in *Architechtonics*, 111 Wn. App. 725, confused the two rules and applied the tort discovery rule to a construction contract action. The decision conflicted with this court's cases but was not reviewed. *Architechtonics*, 148 Wn.2d 1005.

¶59 In its next session, the legislature responded to the Court of Appeals' error by enacting RCW 4.16.326(1)(g). That statute provides, in pertinent part:

> (1) Persons engaged in any activity defined in RCW 4.16.300 may be excused, in whole or in part, from any obligation, damage, loss, or liability for those defined activities under the principles of comparative fault for the following affirmative defenses:
>
> . . . .
>
> (g) To the extent that a cause of action does not accrue within the statute of repose pursuant to RCW 4.16.310 or that an actionable cause as set forth in RCW 4.16.300 is not filed within the applicable statute of limitations. *In contract actions the applicable contract statute of limitations expires, regardless of discovery, six years after substantial completion of construction*, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later.

RCW 4.16.326(1)(g) (emphasis added). Thus, the legislature reiterated and codified its support of this court's long-standing breach rule for contract actions.

¶60 The majority necessarily admits that "this court has consistently held that accrual of a contract action occurs on breach." Majority at 576. This widely recognized breach rule was intentionally not followed by the Court of Appeals in *Architechtonics*. *See Architechtonics*, 111 Wn. App. at 737 ("The statute of limitation for contract actions begins to run when a party knows or, in the exercise of due diligence should know, of the other party's breach.").

¶61 The majority even demonstrates *Architechtonics'* flawed reasoning and conclusion (before adopting the same rule). Majority at 577-78. The Court of Appeals clearly exceeded its authority by purporting to adopt a new discovery rule in *Architechtonics*. *See State v. Hairston,* 133 Wn.2d 534, 539, 946 P.2d 397 (1997) (holding that the Court of Appeals errs when it departs from the precedent of the Washington Supreme Court). *See also Godefroy v. Reilly,* 146 Wash. 257, 259, 262 P. 639 (1928) ("When this court has once decided a question of law, that decision, when the question arises again, is not only binding on all inferior courts in this state, but it is binding on this court until that case is overruled.").

## Majority Improperly Legislates the Discovery Rule for Our State

¶62 First reaffirming that this court has long upheld the breach rule for contracts and recognizing that *Architechtonics* was wrongly decided, the majority proceeds to engage in its own judicial misadventure. The majority legislates into existence the discovery rule for construction contracts.

¶63 This court is vested with the *judicial* power, not the legislative. WASH. CONST. art. IV, § 1; *State v. Jackson,* 137 Wn.2d 712, 725, 976 P.2d 1229 (1999) (" '[T]he drafting of a statute is a legislative, not a judicial, function.' " (quoting *State v. Enloe,* 47 Wn. App. 165, 170, 734 P.2d 520 (1987))).

It is a fundamental principle of our constitution that the judiciary does *not* possess legislative powers.[12]

¶64 Unfortunately, the majority appears to assume that this court can legislate the discovery rule. Then, taking inspiration from the *Architechtonics* decision it decried, the majority promulgates the discovery rule " 'as a matter of judicial policy.' " Majority at 586.

¶65 Despite acknowledgment that the legislature has "the authority to determine whether a discovery rule should apply in a particular context," the majority makes its determination in place of the legislature. Majority at 582. Without the benefit of hearing and other advantages of legislative process, it asserts that "the benefits of applying the rule outweigh the burdens." *Id.* Such balancing of interests is also the hallmark of the legislative process.

¶66 The majority categorically fails to examine this court's long-standing rule that a contract action accrues upon breach under well-established stare decisis jurisprudence. The majority declines to demonstrate how the rule is both erroneous and harmful—the usual prerequisites to overturning precedent.

¶67 In contrast, this opinion will employ the appropriate stare decisis analysis and show that the rule that contract actions accrue upon breach is reasonable and neither erroneous nor harmful. Thus, there is not justification for overruling our state law and long precedent.

Stare Decisis Supports the Rule that Contract Action Accrues on Breach

¶68 Stare decisis means, literally, "to stand by things decided." BLACK'S LAW DICTIONARY 1443 (8th ed. 2004). This cornerstone of the common law assures that citizens can rely on the rule of law in decision making. It is especially important in contracting where the parties allocate risks

---

[12] THE FEDERALIST No. 47 (James Madison) ("The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.").

and costs. By virtue of stare decisis, courts follow rules laid down in previous judicial decisions unless they contravene principles of justice. *See Windust v. Dep't of Labor & Indus.*, 52 Wn.2d 33, 35-36, 323 P.2d 241 (1958). Stare decisis helps make the system of justice one of unity, assuring that the decisions of courts of last resort are reliable and binding. *State v. Ray*, 130 Wn.2d 673, 677, 926 P.2d 904 (1996); *State ex rel. Wash. State Fin. Comm. v. Martin*, 62 Wn.2d 645, 665, 384 P.2d 833 (1963).

¶69 Continued adherence to legal principle established in precedent allows citizens to choose courses of action with a reasonable expectation of legal consequences. *Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 704, 756 P.2d 717 (1988). Without the stabilizing effect of this doctrine, law becomes subject to the whims of current holders of judicial office. *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970).

¶70 Thus, stare decisis serves both as a protector of common-law liberty and as a restraint upon judicial discretion. The Supreme Court of another state ably expressed the important concerns that underlie adherence to stare decisis:

> It is often the function of the courts by their judgments to establish public policy where none on the subject exists. But overthrow by the courts of existing public policy is quite another matter. That its establishment may have resulted from decisional, rather than statutory, law, is in our opinion, immaterial. Once firmly rooted, such policy becomes in effect a rule of conduct or of property within the state. In the exercise of proper judicial self-restraint, the courts should leave it to the people, through their elected representatives in the General Assembly, to say whether or not it should be revised or discarded.

*Rogers v. Florence Printing Co.*, 233 S.C. 567, 574, 106 S.E.2d 258 (1958).

¶71 Where this court has been urged to abandon a long-established Washington doctrine and to adopt a new rule, we have repeatedly recognized that stare decisis " 'requires a

clear showing that an established rule is incorrect and harmful before it is abandoned.'" *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 147, 94 P.3d 930 (2004) (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d at 653).

¶72 Here, the majority never even attempts to show how that this court's long-standing breach rule is erroneous and harmful under our well-established stare decisis jurisprudence.

The Breach Rule Is *Not* Incorrect

¶73 It is difficult to conjure a rationale for declaring incorrect the rule that contract actions accrue on breach. The majority attempts no such demonstration. That is sufficient to end the inquiry. Nonetheless, we shall go on to demonstrate the correctness of the rule.

¶74 Statutes of limitation and accrual of actions at the time of contractual breach are a central part of contract law. They are the background expectations on which all contracting parties rely. The expectation that a contract cause of action will not accrue until breach is a factor influencing risk calculations of contracting parties. The rule impacts the prices that contracting parties agree to in allocating risks. The ability of a contracting party to check for breach or to assure compliance with the contract, through inspection, before acceptance of the project is part of most construction contracts.

¶75 The breach rule brings greater certainty to contracts and the scope of potential liability arising therefrom. Assignment of potential liability at the outset of the bargain offers an important certainty that is lacking where the discovery rule is employed, and courts must make post hoc, hypothetical determinations about when breach could have been discovered. The present cases illustrate this problem, with claims of construction defects discovered years after each project was accepted.

¶76 Contracting parties have particularized knowledge of facts and circumstances surrounding their contracts, and

judgments of contracting parties in this state are premised upon the breach rule. For example, a party may inspect before acceptance of a project, a practice further supported by multiple government inspections. A change in established accrual rules undermines the contracting parties' bargain. It was legitimate for those parties to contract according to our long-standing breach rule; it is also beneficial to allow such contract allocation of risk and inspection and acceptance. The owner gets what he contracted for and may sue to enforce.

## The Breach Rule Is *Not* Shown Harmful

¶77 There is no basis for concluding that the breach rule is affirmatively harmful, and the majority failed to make such demonstration. For that reason alone, there is no warrant for this court's reversal of the long-standing rule. However, there is also ample reason for concluding that the breach rule is beneficial and that the majority's imposition of a discovery rule is harmful. In particular, imposition of the discovery rule in the context of construction contract disregards the important distinction between contract and tort.

¶78 In *Berschauer/Phillips Construction Co. v. Seattle School District No. 1*, 124 Wn.2d 816, 826, 881 P.2d 986 (1994), this court reaffirmed "the fundamental boundaries of tort and contract law." This court rightly recognized that it is of the utmost importance "to ensure that the allocation of risk and the determination of potential future liability is based on what the parties bargained for in the contract." *Id.*

¶79 It may be sensible to apply the discovery rule in situations where the parties have not entered into close contractual relations for a particular undertaking. *See U.S. Oil & Ref. Co. v. Dep't of Ecology*, 96 Wn.2d 85, 633 P.2d 1329 (1981) (applying the discovery rule in an action involving illegal discharge of pollutants); *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969) (applying the discovery rule in a medical malpractice claim), *superseded by statute,*

RCW 4.16.360, *as recognized in Teeter v. Lawson*, 25 Wn. App. 560, 563, 610 P.2d 925 (1980).

¶80 The majority's decision to impose the discovery rule into the contractual setting extends tort principles beyond their rightful boundaries. The result is an infringement of contract obligations freely consented to by autonomous parties. WASH. CONST. art. I, § 23 ("No . . . law impairing the obligations of contracts shall ever be passed."). *See also* U.S. CONST. art. I, § 10, para. 1.

¶81 In *Stuart v. Coldwell Banker Commercial Group, Inc.*, 109 Wn.2d 406, 420, 745 P.2d 1284 (1987), this court observed that "[t]ort law is concerned with the obligations imposed by law, rather than by bargain." "In contrast, contract law protects expectation interests, and provides an appropriate set of rules when an individual bargains for a product of particular quality or for a particular use." *Id.*

¶82 The distinction between remedies in tort and contract liability "encourages parties to negotiate toward the risk distribution that is desired or customary." *Berschauer*, 124 Wn.2d at 827. *Berschauer* reflected the need to "preserve the incentive to adequately self-protect during the bargaining process." *Id.* Unfortunately, the majority's imposition of the discovery rule disregards the bargaining process in allocating risk and liability.

¶83 The majority's proffered justification for imposing the discovery rule is flimsy. It contends that application of the discovery rule in this construction contract setting "is a logical and desirable expansion of the discovery rule." Majority at 579. Bootstrapping is no substitute for reasoning. The majority's policy preference for the discovery rule does not satisfy the requirements for overruling long-standing precedent. Nor does the mere fact that the discovery rule is given application in other contexts justify this extension.

¶84 The majority's contention that "it is unfair to permit a defendant to escape responsibility for shoddy construction simply because the cause of action is based on contract

rather than a tort theory," *id*. at 580, disregards the importance of private party contracting and calculated risk-allocation that this court has long respected. *See Berschauer*, 124 Wn.2d 816 (tort law is imposed by law, rather than by bargain). There is absolutely nothing *fair* in judicially second-guessing private, contractual decisions premised on a well-understood rule about when contract claims become stale. Further, contractors already have incentive to avoid breaching their contracts. Contractees also benefit from the certainty of the prevailing breach rule in the form of reduced prices.

¶85 Faced with the greater uncertainty as to construction liability that comes with the discovery rule, contractors will ask a higher price to compensate. Courts should not use their coercive powers to artificially increase contract prices where autonomous parties can consent to the price-level and risk-level they find optimal. For an obvious example, the contractee may determine whether a foundation or a window will be standard (up to building "code") or will be built to a higher, more expensive standard, e.g., to withstand flood or heavy rains or to last longer. Each change will result in an agreed price difference.

## Breach Rule Applies to All Washington Cases

¶86 It should not be necessary for this court to reach the issue of whether RCW 4.16.326(1)(g) should be given retroactive effect. *See, e.g., McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 324, 12 P.3d 144 (2000). Properly considered, the breach rule for contract actions remained the law of this state regardless of *Architechtonics* (and until changed by the majority). The breach rule should apply to all contract cases in this state, including both of the cases decided here.

¶87 Strictly speaking, the legislature through RCW 4.16.326(1)(g) codified (clarified) existing law. Even if the legislature had not enacted RCW 4.16.326(1)(g), the breach rule would apply in this state. RCW 4.16.326(1)(g) simply

punctuates the preexisting breach rule and should apply to the respective cases being decided on this appeal.

¶88 The majority's conclusion that RCW 4.16.326(1)(g) does not apply retroactively is plagued by logical inconsistency. For the majority to deny RCW 4.16.326(1)(g) effect, it must assume that the breach rule was changed by the Court of Appeals in *Architechtonics* and that the statute restored the status quo ex ante. But the majority concedes that Court of Appeals decisions cannot contravene decisions of this court. Majority at 578 (citing *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984)). The majority likewise concedes that the Court of Appeals had no authority to impose the discovery rule in *Architechtonics. Id.* Thus, because the discovery rule was never the law of this state, the legislature cannot be said to have "retroactively" overturned the discovery rule through RCW 4.16.326(1)(g). At most, the majority decision creates an aberrant "window" of bad law, closed by the legislature.

RCW 4.16.326(1)(g) Limits the Majority's Holding

¶89 Despite the majority's efforts to replace the breach rule with the discovery rule, the majority acknowledges that its holding is subject to RCW 4.16.326(1)(g). Thus, prospectively contracting parties may plead RCW 4.16-.326(1)(g) as an affirmative defense to preclude application of the newly adopted (but short-lived) discovery rule. Majority at 582. Unfortunately, under the majority's decision, only those few contract actions filed between the decision in *Architechtonics* and the adoption of RCW 4.16-.326(1)(g) will apply the discovery rule (and presumably only in Division One of the Court of Appeals). This is a strange result that this court could have avoided by proper analysis. Nonetheless, there is consolation in the fact that the discovery rule will find application only in future cases where RCW 4.16.326(1)(g) may *not* be pleaded as an affirmative defense.

Disposition of Cases

*1000 Virginia Limited Partnership v. Vertecs Corp.*

¶90 Unlike the majority, I would reverse the Court of Appeals ruling that the discovery rule applies in *1000 Virginia*, 127 Wn. App. 899. I would also reverse the Court of Appeals ruling that RCW 4.16.326(1)(g) does not control.

¶91 However, I do also conclude that issues of material fact preclude summary judgment and require remand. The record indicates that the trial court did *not* squarely address whether 1000 Virginia's contract claims were barred by laches, estoppel, and waiver, or whether the case presented issues of fact regarding when 1000 Virginia knew or should have known its injury. A factual inquiry is warranted in light of this court's standard of review for summary judgment. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (holding that evidence and inferences are viewed in favor of the nonmoving party). *See also Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) ("The de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion."). Issues of material fact remain to be resolved.

*Lombardi v. JTE Construction, Inc.*

¶92 Contrary to the majority, I would also reverse the Court of Appeals ruling in *Lombardi*, noted at 29 Wn. App. 1031, 2005 Wash. App. LEXIS 2424, which overturned the trial court's summary judgment order. The trial court correctly concluded that Lombardi's claim was time-barred.

¶93 Unlike the Court of Appeals in *Lombardi*, I therefore would reach the issue of JTE Construction, Inc.'s request for attorney fees raised on cross-appeal. I would conclude that JTE is entitled to attorney fees as the prevailing party under the terms of its contract and paragraph 9 of the addendum. The relevant contractual provision is expressly enforceable under RCW 4.84.330. Con-

trary to the majority, I would award JTE attorney fees and costs.

## CONCLUSION

¶94 Today's majority decision departs from separation of powers principles, fails to follow this court's usual adherence to stare decisis, and disregards crucial distinctions between contract and tort. The majority's adoption of this discovery rule directly conflicts with the legislature's latest enactment to the contrary. RCW 4.16.326(1)(g) (LAWS OF 2003, ch. 80, § 1). There is consolation in the majority's concession that parties in the future may raise RCW 4.16.326(1)(g) as an affirmative defense, precluding application of this discovery rule in most future construction contract actions. The majority decision will have the short life it deserves.

¶95 I dissent.

ALEXANDER, C.J., concurs in the result of the dissent.