# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FORT DISCOVERY CORP., a Washington Corporation; STEPHEN ANDERSON, STEVEN GILSTROM, and JAY TOWNE, | No. 53245-0-II |
| Appellants, | |
| v. | |
| JEFFERSON COUNTY, a Washington municipality, | UNPUBLISHED OPINION |
| Respondent. | |

CRUSER, J. — In November of 2017, we decided *Kitsap County v. Kitsap Rifle and Revolver Club*, 1 Wn. App. 2d 393, 405 P.3d 1026 (2017), upholding a Kitsap County ordinance that imposed uniform permitting requirements on commercial shooting facilities. Shortly thereafter, Jefferson County undertook the creation of its own ordinance, modeled after the one we upheld in *Kitsap County*. However, unlike the Kitsap County ordinance, Jefferson County's ordinance included a restriction on shooting at commercial facilities after dark. Appellants, including commercial shooting range owners and their patrons, filed suit seeking to invalidate Jefferson County's ordinance.

Appellants Fort Discovery Corp., Stephen Anderson, Steven Gilstrom, and Jay Towne, (together, "Appellants") appeal from the trial court's order granting summary judgment in favor

of Jefferson County and denying Appellants' cross motion for summary judgment. Appellants argue that the trial court erred because (1) RCW 9.41.290 preempts Jefferson County's ordinance, (2) the preemption exception in RCW 9.41.300(2) does not apply, (3) the ordinance is unconstitutional under article I, section 24 of the Washington Constitution, and (4) the ordinance is unconstitutional under the Second Amendment of the United States Constitution.

We hold that (1) RCW 9.41.290 does not preempt the entire ordinance, but the provision restricting shooting after dark regulates the discharge of firearms within the scope of RCW 9.41.290; (2) the entire ordinance, including the restriction on shooting after dark, is valid because this restriction falls within the exception to preemption under RCW 9.41.300(2)(a); (3) the ordinance does not violate article I, section 24 of the Washington Constitution; and (4) the ordinance does not violate the Second Amendment of the United States Constitution.

Accordingly, we affirm.

FACTS

I. Commercial Shooting Facilities in Jefferson County

Fort Discovery Corporation ("Fort Discovery") operated a commercial shooting range in Jefferson County from 1990 to 2017. The Jefferson County Sportsmen's Association ("Sportsmen's Association") is the only other commercial shooting range currently operating in Jefferson County. The Sportsmen's Association has been operating for over 56 years, with a "perfect" safety record, and has not had "incidents of any kind," during that time period. Clerk's Papers (CP) at 305. Fort Discovery similarly did not have any incidents requiring "'medical attention'" during its 27 years of operation. *Id.* at 174.

2

In the summer of 2017, Joseph D'Amico, president of Fort Discovery, decided to move the gun range to a new location. D'Amico informed the Jefferson County planning department of his intent to close the former range and build a new range in a remote location near Lake Tarboo, where the nearest inhabited home was approximately 1.5 miles from the property. However, D'Amico's plans to move the gun range came to a halt on December 18, 2017, when Jefferson County issued an emergency moratorium on any new shooting ranges in unincorporated Jefferson County.

## II. EMERGENCY MORATORIUM

The emergency moratorium was passed to allow the Jefferson County Board of County Commissioners ("BoCC') to develop an ordinance that would provide uniform permitting requirements for shooting ranges. The moratorium called for the creation of a review committee to advise the BoCC in drafting the ordinance, consisting of multiple interested parties including representatives from both commercial shooting facilities,[1] the Jefferson County sheriff, and "at large" property owners appointed by the BoCC, among others. *Id.* at 243. The review committee's task was to "study the safety, environmental and land use impacts of commercial shooting facilities and reasonable measures to address those impacts," and to "provide input to the County as the County generates and recommends a draft ordinance." *Id.*

The moratorium ordinance included among the legislative findings that,

> **WHEREAS**, bullets striking a residence on November 22, 2017 near the shooting range located at 112 Gun Club Rd., Port Townsend, WA 98368 on land owned by Jefferson County but operated by Jefferson County Sportsmen's Association called to question the safety of commercial shooting facilities, even

---

[1] The review committee included D'Amico, representing Fort Discovery and Security Services Northwest, Inc., a private security company, as well as John Minor, representing the Sportsmen's Association.

> though it was ultimately determined the damage was likely not caused by the shooting facility operated by Jefferson County Sportsmen's Association.

*Id.* at 240. This finding refers to an incident during which a realtor was showing a property to a prospective buyer when they heard bullets going past the trees overhead and saw what they believed were bullet holes in a trailer on the property. Sheriff Art Frank determined that the complaint was "unfounded." *Id.* at 275. He opined that the dents visible on the trailer did not appear to be caused by the direct fire of bullets coming from the range and the design of the range "appear[ed] to be constructed sufficiently to prevent a direct shot from striking the structure." *Id.* at 272. The sheriff also did not believe, based on his "experience and understanding of bullet behavior," that the bullets heard traveling overhead at that property originated from the Sportsmen's Association. *Id.*

During the sheriff's investigation, Captain Stamper researched whether there were any prior reports of bullets leaving the Sportsmen's Association facility and Stamper discovered 11 complaints from a variety of addresses in the area dating back to 2008, not including the incident involving the realtor. Two complaints that involved bullets striking property were explicitly determined to be unfounded at the time they were investigated. For the remaining nine complaints, Stamper's memorandum could be read to suggest that the shooting position on the range was too far to allow stray bullets to pass overhead or to reach any of the nearby properties, but it did not make any specific conclusions to that effect.

### III. REVIEW COMMITTEE AND DRAFT ORDINANCE

The review committee produced a comprehensive report, as well as a draft ordinance that was consistent with the report, to the BoCC in August 2018. The report noted that, after "many weeks" of "active participation" at public review committee meetings, the draft ordinance was "borne of balancing interests," to which some parties will object because "it goes too far and some probably will say it does not go far enough." *Id.* at 412. Nevertheless, the review committee believed the draft ordinance would withstand legal challenge because the drafting process was open and inclusive, it did not directly regulate "any particular facility, person or project, despite the claims of some and the hopes of others," and committee members "worked hard to rely on the BoCC's substantial health and safety powers as the basis for the draft ordinance, as Kitsap County[2] did in its successful defense of its own shooting range ordinance." *Id.* The review committee also relied heavily on the NRA Range Source Book, which provides guidance to assist in designing safe shooting facilities. The draft ordinance repeated in its entirety the legislative finding regarding the report of a bullet striking a residence that was also included among the legislative findings in the moratorium.

There was an extended public comment period for the draft ordinance, as well as public hearings. Fort Discovery submitted written comments on the draft ordinance, and a representative from the Sportsmen's Association gave "detailed testimony." *Id.* at 662.

---

[2] The review committee was expressly referring to this court's opinion in *Kitsap County v. Kitsap Rifle and Revolver Club*, 1 Wn. App. 2d 393, 405 P.3d 1026 (2017).

IV. JEFFERSON COUNTY ORDINANCE 12-1102-18

The BoCC passed the final ordinance ("ordinance") on November 2, 2018, which was codified in ch. 8.50 of the Jefferson County Code (JCC). The ordinance was similar to the draft version, but it also included "numerous revisions" adopted in consideration of the public testimony, including "many changes requested by [the Sportsmen's Association]." *Id.* at 662.

The purpose of the ordinance was to "provide uniform requirements for the establishment and operation of all commercial shooting facilities in unincorporated parts of the county." *Id.* at 201. In keeping with this purpose, the ordinance imposed, for the first time, permitting requirements for commercial shooting facilities. For example, to obtain an operating permit, commercial shooting facilities must undergo a professional safety evaluation by a qualified shooting range evaluator. The safety evaluation ensures consistency with the NRA Range Source Book "for facility designs and institutional controls." *Id.* at 216. In addition, the ordinance outlined minimum standards for security, containment, and public health and environmental impacts.

The ordinance did not include the legislative finding regarding the bullet striking the residence. However, the ordinance did include other legislative findings that more broadly addressed matters of public safety.

For example, the findings in the ordinance state that the County has experienced increases in population density in areas proximate to commercial shooting ranges, and the County "has an interest in ensuring the compatibility of commercial shooting facilities with their surroundings and in minimizing potential safety hazards." *Id.* at 184. In addition, "public complaints about lack of safety and land use compatibility issues arising from the operation of commercial shooting facilities . . . have called on the scarce resources of Jefferson County's emergency management

system and the Sheriff's office." *Id.* The BoCC specifically noted that the rural areas where it may be appropriate to have a commercial shooting facility also tend to have scarce emergency services.

> The ordinance also contained a provision, as part of the safety plan, which required that:

> no shooting take place after dark, except for law enforcement officers or members of the armed forces[,] provided such shooting after dark for law enforcement officers or members of the armed forces does not occur after 10 p.m., shooting does not exceed four hours, and the maximum days shooting after dark is allowed does not exceed one day per week.

*Id*. at 213-14.[3] The Sportsmen's Association's range did not offer evening shooting to its patrons, but the old Fort Discovery range did. Fort Discovery did not learn about the restriction on evening shooting until the day the ordinance was passed. The topic was not addressed during review committee deliberations. However, night shooting had been raised during public hearings before the BoCC and was discussed at the last public hearing the day before the ordinance was passed. Fort Discovery believed that the provision was, in its view, "a political compromise. Opponents to the gun range didn't want any shooting after 5:00 p.m." Verbatim Report of Proceedings (VRP) at 19. Then, "all of a sudden at the last minute, evening shooting restrictions appeared." *Id.*

---

[3] Jefferson County Board of County Commissioners amended the ordinance and replaced it with Ordinance 04-0224-20, App. B, § 8.50.240(2)(p) (Feb. 24, 2020). With respect to this provision, the current version limits the restriction on shooting after dark to outdoor facilities; indoor facilities may allow patrons to shoot after dark. *Compare* Ordinance 12-1102-18, App. B, § 8.50.240(2)(p) (Nov. 2, 2018) *with* Ordinance 04-0224-20, App. B, § 8.50.240(2)(p) (Feb. 24, 2020).

V. DECLARATORY RELIEF ACTION

Fort Discovery, together with Stephen Anderson, an individual who shot at the old Fort Discovery range, Steven Gilstrom, who also shot at the old Fort Discovery range, and Jay Towne, president of the Sportsmen's Association, filed suit seeking declaratory relief. They sought to invalidate the entire ordinance, alleging it was preempted under RCW 9.41.290 and that RCW 9.41.300(2)(a), which provides an exclusion to preemption under RCW 9.41.290, did not apply. Appellants further argued that the ordinance was unconstitutional under article I, section 24 of the Washington Constitution and the Second Amendment of the United States Constitution. Appellants also claimed that the provision banning evening shooting was invalid for the same reasons, even if the entire ordinance was not.

The County filed its motion for summary judgment on December 18, 2018, arguing that following this court's decision in *Kitsap County*, it was entitled to judgment as a matter of law because the ordinance is constitutional under both the state and federal constitutions and is not preempted under RCW 9.41.290. Appellants filed a cross motion for summary judgment on December 21, 2018, conceding that there were no genuine issues of material fact but arguing that they were entitled to judgment as a matter of law because the ordinance was preempted by RCW 9.41.290, that RCW 9.41.300(2)(a) did not apply, and that the ordinance was unconstitutional under both the state and federal constitution.

Following oral argument on both motions, the trial court granted the County's motion for summary judgment and denied the Appellants' cross motion for summary judgment. It ruled that RCW 9.41.290 does not apply to the Jefferson County ordinance, citing *Kitsap County*, and that even if the ordinance regulated the discharge of firearms, and thus fell within the purview of RCW

8

9.41.290, it was a permissible regulation under RCW 9.41.300(2)(a). Further, the trial court ruled that the ordinance neither violated article I, section 24 of the Washington Constitution nor the Second Amendment of the United States Constitution. The trial court also wrote a memorandum opinion consistent with its ruling.

Appellants appeal the order granting Jefferson County's motion for summary judgment and denying Appellants' motion for summary judgment.

## DISCUSSION

### I. STANDARD OF REVIEW

This court reviews a summary judgment order de novo, and it engages in the same analysis as the trial court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Associated Press v. Wash. State Leg.*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019) (plurality opinion). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The interpretation and application of a statute is a matter of law that is subject to de novo review. *Kitsap County*, 1 Wn. App. 2d at 402. Constitutional issues are also reviewed de novo. *State v. Sieyes*, 168 Wn.2d 276, 281, 225 P.3d 995 (2010).

### II. APPLICATION OF RCW 9.41.290

Appellants argue that the ordinance is invalid because it is preempted by RCW 9.41.290. Appellants contend that even though this court determined the largely similar Kitsap County ordinance was not preempted under RCW 9.41.290, the facts of this case compel a different result. Specifically, Appellants claim this case is distinguishable from *Kitsap County* because here, (1) the ordinance regulates the "discharge" of firearms when it prohibits shooting after dark, and (2)

the ordinance is more "onerous" than the Kitsap County ordinance because it is 27 pages longer. Br. of Appellants at 22-23.

The County argues that the ordinance is not preempted under RCW 9.41.290 because the ordinance regulates shooting facilities, and nothing in RCW 9.41.290 prevents local governments from regulating shooting facilities. In addition, the County contends that like the ordinance in *Kitsap County*, this ordinance does not directly regulate the discharge of firearms because it imposes requirements only on the owners and operators of commercial shooting facilities but not on its patrons.

We agree with the Appellants that the restriction on shooting after dark regulates the "discharge" of firearms and falls within the scope of RCW 9.41.290. However, the remaining permitting provisions do not implicate the discharge of firearms and, therefore, the ordinance is not preempted under RCW 9.41.290.

A. LEGAL PRINCIPLES

A local government is vested with authority under article XI, section 11 of the Washington Constitution to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." RCW 36.32.120(7) grants this same power specifically to counties. "Local governments have 'considerable latitude in exercising police powers' and a regulation is reasonable 'if it promotes public safety, health or welfare and bears a reasonable and substantial relation to accomplishing the purpose pursued.'" *Kitsap County*, 1 Wn. App. 2d at 404 (quoting *City of Seattle v. Montana*, 129 Wn.2d 583, 591-92, 919 P.2d 1218 (1996) (abrogated on other grounds by *Yim v. City of Seattle*, 194 Wn.2d 682, 702, 451 P.3d 694 (2019)).

An ordinance that conflicts with a state statute is invalid under article XI, section 11. *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 225-26, 351 P.3d 151 (2015). But we presume that an ordinance is constitutional under article XI, section 11, and the party challenging an ordinance faces a "'heavy burden'" of proving otherwise. *Id.* (quoting *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 477, 61 P.3d 1141 (2003)). Where the legislature intends to preempt the entire field on a given subject, "leaving no room for concurrent jurisdiction," and a local ordinance addresses the same subject, the local ordinance conflicts with the state statute. *Lawson v. City of Pasco*, 168 Wn.2d 675, 679, 230 P.3d 1038 (2010). Such field preemption may occur where legislative intent is express or where it is necessarily implied. *Watson v. City of Seattle*, 189 Wn.2d 149, 171, 401 P.3d 1 (2017).

The statute at issue here, RCW 9.41.290, is an example of "clear preemption language." *Id.* at 171. RCW 9.41.290 provides,

> The state of Washington hereby *fully occupies and preempts the entire field of* firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms . . . Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law.

(emphasis added). "We must interpret an express preemption clause narrowly but fairly." *Kitsap County*, 1 Wn. App. 2d at 404.

B. ANALYSIS

In *Kitsap County*, this court held that RCW 9.41.290 did not preempt the Kitsap County ordinance because Article 2, the challenged article of the ordinance, was not a "firearms regulation" within the scope of RCW 9.41.290. *Id.* at 408. In that case, Kitsap County adopted an

ordinance that required all shooting facilities, including existing facilities, to obtain an operating permit, and failure to obtain such a permit would result in closure of the shooting range. *Id.* at 400. The Club argued that RCW 9.41.290 preempted Kitsap County's ordinance because the permitting requirements effectively regulated the discharge of firearms. *Id.* at 406.

This court disagreed and held that Article 2 did not regulate the discharge of firearms. *Id.* Instead, Article 2 only regulated shooting facilities, and there is nothing in ch. 9.41 RCW that pertains to shooting facilities, nor is there any "indication that the legislature intended to preempt local ordinances requiring shooting facilities to obtain operating permits." *Id.*[4]

Here, Appellants argue that RCW 9.41.290 preempts the entire ordinance because it regulates the discharge of firearms and "shooting guns at a gun range is the 'discharge' of guns. It just is." Reply Br. of Appellant at 5-6. But this court flatly rejected an identical argument raised by the Club in *Kitsap County* because the ordinance did not actually impose any restrictions on the individuals who "discharge firearms" at those facilities. 1 Wn. App. 2d at 407.

Appellants correctly identify the shooting after dark provision as distinguishing this case from *Kitsap County*. There were two articles in the Kitsap County ordinance, and this court held that Article 2, "unlike Article 1 . . . [did] not prohibit or expressly regulate the discharge of

---

[4] Moreover, the Kitsap County ordinance was not in conflict with RCW 9.41.290 because the statute permits counties to enact laws relating to firearms "'that are specifically authorized by state law.'" *Kitsap County*, 1 Wn. App. 2d at 405 (quoting RCW 9.41.290). Imposing permitting requirements on shooting facilities falls within a county's police power authorized by RCW 36.32.120(7). *Id.* at 407. In addition, this court reasoned that recent Supreme Court cases have limited the preemptive scope of RCW 9.41.290 and upheld local government regulations. *Id.* at 407-08. Applying the RCW 9.41.290 preemption to permitting requirements on shooting facilities would broaden the statute's preemptive scope in a manner inconsistent with recent Supreme Court decisions. *Id.*

firearms." *Id*. at 406. Article 1, on the other hand, "clearly regulates the discharge of firearms," because it "expressly prohibits the discharge of firearms in certain areas." *Id*. at 406 n.3. But the Club limited its challenge to Article 2. *Id*.

Here, the ordinance contains a provision which provides that shooting after dark is not permitted, except by law enforcement officers or members of the armed forces. Shooting after dark is permitted one day per week and may not exceed four hours. Unlike Article 2 in the *Kitsap County* ordinance, which exclusively imposed permitting requirements on facility owners and the facilities themselves, this provision regulates who can shoot at commercial facilities, when, and for how long. *See id.* at 406. This provision, therefore, reaches shooting facility patrons, directly impacting their ability to discharge a firearm at the facility at certain hours of the day where other individuals are not so restricted. Consequently, this provision regulates the discharge of firearms and the RCW 9.41.290 preemption applies.

### III. EXCEPTION TO PREEMPTION UNDER RCW 9.41.300(2)(A)

Appellants argue that the exception to the RCW 9.41.290 preemption under RCW 9.41.300(2)(a) does not apply because there was no legitimate safety rationale supporting the imposition of the permitting restrictions. They assert that the language "reasonable likelihood" under RCW 9.41.300(2)(a) is not satisfied by mere speculation and that instead, there must be "specific factual legislative findings" justifying the County's reliance on the exception. Br. of Appellants at 23-24.

We disagree with the Appellants and hold that there is no requirement that the ordinance must be supported by specific legislative findings. Because it is "conceivable" that shooting after

dark may jeopardize humans and property, this regulation on discharging weapons falls within the exception to preemption in RCW 9.41.300(2).

A. LEGAL PRINCIPLES

RCW 9.41.290 states that local governments are not preempted from enacting ordinances that fall within the purview of that statute if the regulations are authorized under RCW 9.41.300. Relevant here, RCW 9.41.300(2)(a) provides that counties are authorized to enact ordinances "[r]estricting the discharge of firearms . . . where there is a reasonable likelihood that humans, domestic animals, or property will be jeopardized." The limiting principal in this statute states that such ordinances cannot abridge rights guaranteed under article I, section 24 of the state constitution. RCW 9.41.300(2)(a). The constitutionality of restrictions on shooting after dark will be addressed separately in section III, below.

To the extent that a provision regulates the discharge of firearms under RCW 9.41.290, then RCW 9.41.300(2)(a) may provide an exception for that regulation. *Kitsap County*, 1 Wn. App. 2d at 412. "However, to the extent that regulations regarding the operation of shooting ranges do not affect the discharge of firearms, preemption under RCW 9.41.290 does not apply at all to those regulations and no exception is needed to avoid preemption." *Id.* Therefore, a provision that pertains to the discharge of firearms can be severed for analytical purposes from the remaining provisions in the ordinance.

B. ANALYSIS

In *Kitsap County*, this court held that even if the Kitsap County ordinance were a regulation related to the discharge of firearms under RCW 9.41.290, the exception to preemption in RCW 9.41.300(2)(a) applied because "shooting ranges create a risk of danger to people and property."

*Id*. at 409. This court analyzed general statements from the preamble as well as statements regarding the ordinance's purpose. *Id.* at 409-10.

For example, the preamble to Kitsap County's ordinance stated, "'[T]he County has an interest . . . in minimizing potential safety hazards created by the operation of shooting ranges.'" *Id*. at 409 (alteration in original) (quoting CP at 15). The preamble also contained an express acknowledgement of RCW 9.41.300(2)(a). *Id.* In addition, the purpose statement to the ordinance provided,

> The purpose of this article is to provide for and promote the safety of the general public by establishing a permitting procedure . . . The shooting range standards adopted herein are intended to protect and safeguard participants, spectators, neighboring properties and the public.

*Id.* at 409-10 (emphasis omitted) (quoting Kitsap County Code 10.25.060). This court held that these legislative statements were sufficient to establish that the preemption exception in RCW 9.41.300(2)(a) applied. *Id.*

Here, the ordinance contains nearly identical and perhaps even more extensive legislative statements demonstrating that the ordinance and the shooting after dark provision were enacted to address a reasonable likelihood that shooting ranges may jeopardize humans and property. For example, in the preamble, the ordinance states that the County has an interest in "minimizing potential safety hazards created by the operation of commercial shooting facilities." CP at 184. The preamble goes on to state that commercial shooting facilities may be appropriate in rural areas, but in those areas, "emergency services are scarce and adopting a commercial shooting ordinance would promote public safety and preserve precious emergency services." *Id.* at 185. Similar to the Kitsap County ordinance, here the County also expressly mentioned RCW 9.41.300(2)(a) in the

preamble. And in describing the purpose of the ordinance, the County explained that it was created to "[e]stablish a permitting procedure and rules for the siting, design and operation of commercial shooting facilities that protect participants, spectators, neighboring properties and the public," *Id.* at 201. Like the legislative statements in *Kitsap County*, these statements are sufficient to satisfy the requirements of RCW 9.41.300(2)(a).

Appellants complain that there is no specific legislative finding demonstrating that the prior operations were unsafe, but such specific findings are not necessary to justify imposing restrictions related to discharging firearms under RCW 9.41.300(2)(a). They cite to the fact that both commercial shooting facilities in the county had a combined "83-year safety track record," and the fact that the legislative finding regarding "the Errant Bullet Pretext," was removed from the final ordinance to demonstrate the infirmity of the County's safety justification. Br. of Appellants at 24.

However, like the Club in *Kitsap County*, Appellants cite no authority supporting their assertion that in order to apply the exception to preemption under RCW 9.41.300(2)(a), the County was required to enter specific findings that show shooting after dark is dangerous or that the existing commercial shooting facilities were not operating safely. 1 Wn. App. 2d at 410. Although in the prior litigation involving the Kitsap Rifle and Revolver Club, there were substantial unchallenged findings demonstrating that the Club had been operating unsafely, in applying the preemption exception, this court held that specific findings were unnecessary. *Id.* at 410-11.

Instead, this court recognized that an ordinance need not be predicated on specific findings because the constitution does not require county commissioners to "conduct a special investigation or make formal findings before they exercise their police power." *Id*. at 410 (quoting *Petstel, Inc. v. County of King*, 77 Wn.2d 144, 151, 459 P.2d 937 (1969)). Rather, "'if a state of facts justifying

the ordinance can reasonably be conceived to exist, such facts must be presumed to exist, and the ordinance passed in conformity therewith.'" *Id.* (internal quotation marks omitted) (quoting *State v. McCuistion*, 174 Wn.2d 369, 392, 275 P.3d 1092 (2012)).

It is a matter of common understanding that firearm use can encompass certain dangers and that shooting in lower light may increase these dangers. Consequently, it is conceivable that shooting ranges in general, and shooting after dark in particular, may jeopardize humans and property. *See id.* at 411. "Therefore, we must presume that such facts existed," and that the ordinance was enacted "in conformity with those facts." *Id.* at 411. Whether shooting facilities had operated safely up to that point is irrelevant, as is the fact that a particular claim regarding an errant bullet was determined to be unfounded. Accordingly, the shooting after dark provision falls within the exception to preemption under RCW 9.41.300(2)(a) because it was enacted under the ordinance's broader purpose of "protect[ing] participants, spectators, neighboring properties and the public." CP at 201.

### III. ARTICLE I, SECTION 24[5]

Appellants argue that the ordinance violates article I, section 24 of the Washington Constitution because it unduly burdens a "range training right"[6] inherent to the state constitutional right to bear arms in self-defense. Br. of Appellant 40. Appellants first urge this court to "clarify" that the proper test for determining whether a local ordinance violates article I, section 24 is either strict or intermediate scrutiny, as opposed to the traditionally applied test of constitutional reasonableness, because the latter test is a weaker protection than either the strict or intermediate scrutiny standards required under the Second Amendment. Appellants further argue that this court should afford the range training right even greater protection than the "[m]inimum of [i]ntermediate [s]crutiny" because (1) the range training right is "closely intertwined" with the

_____

[5] Where it is feasible to do so, we will resolve constitutional issues under our own state constitution before turning to federal law. *State v. Jorgenson*, 179 Wn.2d 145, 152, 312 P.3d 960 (2013). Appellants argue that this case presents an example of an occasion on which this court should depart from the traditional order and address the United States Constitution first. Appellants claim that because the Second Amendment provides a "federal floor" of minimum protections for the right to bear arms, our state constitution cannot provide weaker protections of this same right. Br. of Appellants at 35-36. However, in *Jorgenson*, our Supreme Court held that the right to bear arms under the state and federal constitution must be interpreted separately. 179 Wn.2d at 152. Therefore, we should address article I, section 24 first.

[6] Appellants derive the "range training right" from the 7th Circuit opinion in *Ezell v. City of Chicago*, 651 F.3d 684, 704-06 (7th Cir. 2011). There, the court recognized that the right to train and practice in the use of firearms at shooting ranges is protected under the Second Amendment. *Ezell*, 651 F.3d at 704-06. No Washington court has recognized an analogous right under article I, section 24. *See Kitsap County*, 1 Wn. App. 2d at 414-18. Although in *Kitsap County* this court acknowledged the range training right in its Second Amendment discussion, it did not recognize an analogous right within the scope of article I, section 24. *Id.* at 415, 418. Instead, this court held that permitting restrictions on shooting facilities did not burden the right to bear arms in self-defense under article I, section 24. *Kitsap County*, 1 Wn. App. 2d at 418.

right to bear arms, and (2) a *Gunwall*[7] analysis reveals that the state constitution provides greater protection of this right than the federal constitution. *Id.* at 39-47. Appellants assert that because article I, section 24 provides greater protection than its federal counterpart, this court should analyze the range training right by applying either the strict or immediate scrutiny standard.

We decline to compare the constitutional reasonableness approach to the federal tiers of scrutiny, and we apply the independent analysis described by the court in *Jorgenson*. 179 Wn.2d at 155. A restriction on shooting after dark at a commercial facility and the imposition of permitting requirements on commercial shooting facilities do not violate article I, section 24 because they are reasonable regulations enacted pursuant to the State's police power. In addition, a *Gunwall* analysis is unnecessary because the Supreme Court established that article I, section 24 is analyzed separately from the Second Amendment. *Id.* at 155.

A. LEGAL PRINCIPLES

Article I, section 24 of the Washington Constitution reads,

[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men.

The scope of this right is individual and it "exists only in the context of an individual's 'defense of himself, or the state.'" *Sieyes*, 168 Wn.2d at 293 (quoting Const. art I, § 24). The right to bear

---

[7] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). In *Gunwall*, the Supreme Court provided a mechanism by which courts analyze the scope of a Washington constitutional provision as compared to its federal counterpart, involving six factors: (1) the text of the state constitution, (2) differences in the text of parallel state and federal constitutional provisions, (3) the history of the state constitution, (4) preexisting state law, (5) structural differences between the state and federal constitutions, and (6) matters of particular state interest or local concern. *Id.* at 61-62.

arms under this provision is "not absolute." *Montana*, 129 Wn.2d at 593. Nor is this right secured "because arms are valued per se." *Id.* at 594. The right exists primarily to ensure an individual's ability to act in self-defense or defense of the state. *Id.*

When reviewing a constitutional challenge, this court presumes that a statute is constitutional, and the challenger has the burden of showing that it is unconstitutional. *City of Seattle v. Evans*, 184 Wn.2d 856, 861-62, 366 P.3d 906 (2015).

B. CONSTITUTIONAL REASONABLENESS

Appellants argue that this court should depart from the constitutional reasonableness standard upheld by the Supreme Court in *Jorgenson* because *Jorgenson* was decided in 2013, and current Second Amendment cases demonstrate that a higher level of scrutiny is needed to protect the range training right. Appellants claim that the Washington Constitution cannot provide weaker protections than those afforded under the Second Amendment. We disagree and hold that this court cannot depart from the analysis required by controlling authority and we continue to apply the constitutional reasonableness standard. We hold that under this standard, the ordinance and the shooting after dark provision are constitutionally reasonable.

This court is bound by a decision of the Washington Supreme Court and is required to follow Supreme Court precedent. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006). Failure to follow legal authority that directly controls analysis of an issue is error. *Id.* at 578. Appellants do not attempt to distinguish between this case and *Jorgenson*. Rather, they mean for this court to directly reject the approach to article I, section 24 analysis articulated by the Supreme Court. *See* Br. of Appellant at 38 n.31 ("This is why Appellants respectfully suggest this Court and ultimately the state Supreme Court need to 'hit the refresh button' on their

holdings from before the blossoming of the federal jurisprudence on the range training right and Second Amendment rights in general."). To the extent that Appellants suggest this court should abandon the "constitutional reasonableness" standard articulated in *Jorgenson* because they claim *Jorgenson* improperly imposed an insufficient standard, we dismiss this suggestion as meritless.[8]

Appellants assert that *Jorgenson* is outdated because it cites Washington cases decided before the "current wave of new Second Amendment jurisprudence," namely referring to the United States Supreme Court Decision in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Br. of Appellant at 38. Appellants suggest that *Heller* and its progeny have rendered Washington cases analyzing article I, section 24 obsolete. But *Jorgenson* was decided after *Heller*, and our Supreme Court did not simply overlook that case. Rather, the court in *Jorgenson* held that *Heller* does not govern the independent analysis of Washington's constitutional provisions. 179 Wn.2d at 156. For this same reason, Appellants' argument that *Jorgenson* was wrongly decided because it articulates a lesser standard than the federal floor of intermediate scrutiny fails. *Jorgenson* does not impose a lesser standard; it imposes a different standard. *Id.*

In *Jorgenson*, the Supreme Court conducted a *Gunwall* analysis and held that "the state and federal rights to bear arms have different contours and mandate separate interpretation." *Id.* at 152. The right to bear arms under article I, section 24 is "subject to reasonable regulation pursuant to the State's police power." *Id.* at 155. A firearm regulation is constitutionally reasonable when it is "'reasonably necessary to protect public safety or welfare, and substantially related to legitimate

---

[8] For the same reason, we reject the Appellants' separate claim that because the right to bear arms in self-defense is a fundamental right, this court should apply a strict scrutiny analysis.

ends sought.'" *Id.* at 156 (quoting *Montana*, 129 Wn.2d at 594). This analysis involves a balancing of "'the public benefit from the regulation against the degree to which it frustrates the purpose of the constitutional provision.'" *Id.* (quoting *Montana*, 129 Wn.2d at 594).

The entire ordinance, as well as the shooting at night provision, are constitutionally reasonable regulations that do not violate article I, section 24. Public safety and welfare are necessarily implicated in any circumstance involving firearms because it is widely understood that guns pose an inherent danger to people and property. Therefore, the public benefit of the ordinance is its creation of uniform permitting requirements designed to "protect participants, spectators, neighboring properties and the public." CP at 201. The ordinance expressly recognizes the value of providing a place for individuals to learn firearm safety "in a safe, controlled setting." *Id.* at 185.

The ordinance, including the shooting after dark provision, do not frustrate the purpose of article I, section 24, because they do not burden any individual's rights to bear arms in self-defense. The ordinance primarily regulates the facility and its operations rather than the rights of the patrons who wish to shoot at the facility. In addition, the ordinance is limited to commercial shooting facilities, and does not apply to "a privately owned property used for lawful shooting practice solely by its owner or the owner's guests without payment of any compensation to the owner of the privately owned property." *Id.* at 202. To the extent that the shooting after dark provision impacts the rights of any patrons not in law enforcement or the armed forces who wish to shoot after dark, this burden is minimal because individuals may still practice shooting in low light conditions in places other than commercial shooting facilities. Taken together, this balancing reveals that the public benefit of the ordinance and the shooting after dark provision outweigh any

burden this enactment imposes on article I, section 24. Consequently, the ordinance is a reasonable regulation pursuant to the County's police power and does not violate the state constitution.[9]

## IV. SECOND AMENDMENT

### A. LEGAL PRINCIPLES

The Second Amendment states, "[a] well regulated [m]ilitia, being necessary to the security of a free State, the right of the people to keep and bear [a]rms, shall not be infringed." The Second Amendment applies to Washington through the due process clause of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010); *Sieyes*, 168 Wn.2d at 296.

---

[9] Appellants argue that a *Gunwall* analysis is required because no court has previously considered the contours of article I, section 24 compared to the Second Amendment with respect to the corollary range training right at issue in this case. However, there is no need to conduct a *Gunwall* analysis in this case because the court in *Jorgenson* has already determined that the rights protected under article I, section 24 and the Second Amendment are not identical and must be separately analyzed. *Jorgenson*, 179 Wn.2d at 155-56. The purpose of conducting a *Gunwall* analysis is to determine when it is appropriate to decide a case that implicates similar federal and state constitutional provisions on independent state grounds. *Gunwall*, 106 Wn.2d at 62. This issue, as applied in the context of article I, section 24 and the Second Amendment, has been finally resolved in *Jorgenson*. 179 Wn.2d at 155. Moreover, to the extent that Appellants argue that because article I, section 24 provides greater protection to the range training right, this court must analyze the ordinance by applying the less deferential strict scrutiny standard, we disagree. The constitutional reasonableness standard used to evaluate article I, section 24 is a distinct standard that has not been assigned a place among the tiers of scrutiny used to evaluate laws that implicate federal constitutional rights. Appellants assume, without providing any support, that constitutional reasonableness is a lesser standard than strict scrutiny, or it is equal to or lesser than intermediate scrutiny. "[W]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *In re Disciplinary Proceeding Against Cottingham*, 191 Wn.2d 450, 465 n.1, 423 P.3d 818 (2018) (alteration in original) (internal quotation marks omitted) (quoting *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978)). We decline to determine where the independent constitutional reasonableness standard fits among the tiers of scrutiny used to evaluate the Second Amendment.

In *Heller*, the Court held that Second Amendment protects an individual's right to keep and bear arms, including firearms, in the home and in an "operable" condition, tied primarily to the core purpose of "immediate self-defense." 554 U.S. at 635. Drawing an analogy to the right to free speech, the Court recognized that this right is "not unlimited." *Id.* at 595.

Following *Heller*, most federal circuit courts, including the Ninth Circuit, adopted a two-step inquiry to determine whether a challenged restriction violates the Second Amendment. *Silvester v. Harris*, 843 F.3d 816, 820-21 (9th Cir. 2016). The first step is the historical step, wherein the court considers whether a challenged law burdens conduct protected under the Second Amendment based on how the right was historically understood. *Id.* at 821. If a challenged law imposes restrictions that can be traced to the founding era, and such restrictions were not considered then to infringe on the Second Amendment, the law does not violate the Second Amendment and may be upheld without further analysis. *Id.*

In the second step, the court determines the appropriate level of scrutiny by which to analyze a challenged law. *Id.* The appropriate level of scrutiny is determined on a "sliding scale," by considering "(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Id.* Rational basis review is never appropriate for analyzing enumerated rights. *Heller*, 554 U.S. at 628 n. 27. Thus, the scale slides between intermediate and strict scrutiny, depending on the degree to which the core right of using arms in self-defense under the Second Amendment is burdened. *Silvester*, 843 F.3d at 821. For example, a law that regulates only the manner in which a firearm may be used is less burdensome on this core right than a law that wholly prohibits possession. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014). In the same vein, "regulations which leave open

alternative channels for self-defense are less likely to place a severe burden on the Second Amendment right than those which do not." *Id.*

A challenged law will withstand intermediate scrutiny analysis if: (1) the government's objective in creating the law was "significant, substantial, or important," and (2) there is a "reasonable fit" between the law and its objective. *Silvester*, 843 F.3d at 821-22.

## B. ANALYSIS

Appellants claim that because the Second Amendment protects the right to train in shooting at a gun range as an ancillary right to the right to bear arms in self-defense, an ordinance that restricts shooting after dark and imposes other regulations on shooting ranges violates the Second Amendment. Appellants assert that the ordinance burdens conduct protected by the Second Amendment. Appellants further claim that the ordinance fails an intermediate scrutiny analysis because the restrictions are not substantially related to any valid safety justifications but instead are a "'solution' in search of a problem" premised on speculation with no factual support. Br. of Appellants at 32-33.

Restrictions on the right to shoot after dark at a commercial shooting facility, or on the right to shoot at commercial shooting facilities that are not subject to permitting requirements, do not burden conduct protected by the Second Amendment. Even assuming, *arguendo,* that the ordinance burdens conduct protected by the Second Amendment, these restrictions present only a modest burden on the ancillary right to train at commercial facilities. And the necessity of these measures is justified by the collaborative process under which the ordinance was created, the reports of bullets reaching properties near the Sportsmen's Association range, the NRA Source Book, and common sense.

*1. The Historical Step*

In *Kitsap County*, the county did not present any argument on the historical step and addressed only the second step, which relates to scrutiny. 1 Wn. App. 2d at 415. This court "assume[d] without deciding" that the ordinance implicated the Second Amendment. *Id.* Here, this issue was briefed extensively and may be fully addressed.

In *Ezell*, the court held that the right to train in the use of firearms was a corresponding right to the Second Amendment. 651 F.3d at 704. The court explained,

> The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective.

*Id.*

In rejecting the City's claim that range training is categorically beyond the scope of the Second Amendment, the court described many founding era statutes and ordinances that imposed restrictions on discharging firearms in certain conditions or that imposed permitting or licensing requirements to engage in firearms practice. *Id.* at 705-06 n.13. A particularly relevant example includes a "1790 Ohio statute that prohibited the discharge of a firearm before sunrise, after sunset, or within one-quarter of a mile from the nearest building." *Id.* at 705. Another relevant example is a 1746 Boston statute which provided that residents could shoot targets "'for the Exercise of their Skill and Judgement . . . at the lower End of the Common' if they obtained permission from the 'Field Officers of the Regiment in Boston.'" *Id.* (alteration in original) (quoting Act of May 28, 1746, ch. X, 1746 Mass. Acts 208). The court identified similar restrictions that required permitting for target practice through 1869. *Id.* at 705 n.13.

The court distinguished the City's "absolute *prohibition*" on shooting ranges within the city limits from these laws because these laws were "merely *regulatory* measures." *Id.* (emphasis in original). The court held that evidence that target practice was regulated does not support the City's assertion that a right to train in the use of arms through target practice was categorically unprotected under the Second Amendment. *Id.* at 705-06.

This case is therefore distinguishable; the ordinance does not provide for a complete ban on range training, but only creates "merely *regulatory* measures" in requiring commercial facilities to obtain operating permits and in prohibiting target practice at commercial facilities after dark for some patrons. *Id.* at 705 (emphasis in original). Because these types of restrictions can be traced to the founding era, they were not then considered to infringe on the rights enumerated in the Second Amendment. *Silvester*, 843 F.3d at 821. Therefore, permitting requirements on commercial shooting facilities and time, place, and manner restrictions on range training at commercial facilities are beyond the Second Amendment as it was historically understood. *Id.*[10]

---

[10] Appellants contend that this court cannot look to statutes from the east coast states to determine whether the restrictions in the ordinance are outside the scope of the Second Amendment. Appellants assert that because there were no restrictions on target practice or range training during the founding era in Washington, the right to range training "without restrictions such as those in the [o]rdinance," is protected by the Second Amendment and the analysis cannot conclude at the historical step. Br. of Appellant at 31. However, Appellants provide no support for their claim that the historical step consideration is limited to the geographical portion of the United States from which the challenged law originates. In addition, this unsupported assertion implies that the Second Amendment provides greater protection of the individual right to self-defense for individuals in western states than in east coast states. This claim is without merit. This is similar to Appellants' argument that citizens in Washington enjoy greater protection of the range training right under article I, section 24 than under the Second Amendment. *See* n. 9, *supra*.

*2. Intermediate Scrutiny Application Step*

Even if the ordinance burdens a right protected by the Second Amendment, the ordinance passes constitutional muster. We must first determine which level of scrutiny applies to the specific restriction in this case. *Id.* at 821. Both Appellants and the County agree that intermediate scrutiny is appropriate here. They are correct; the restrictions at issue in this case place only a minimal burden on the core right to self-defense under the Second Amendment and the ordinance must therefore be analyzed under intermediate scrutiny. *Id.*

Appellants agree that ensuring safety at gun ranges is an important government purpose and this issue is not in dispute. *See Kitsap County*, 1 Wn. App. 2d at 417 (holding that "[t]he County has an important government interest in public safety—ensuring that shooting facilities do not endanger people or property."). But Appellants argue, relying heavily on *Ezell*, that the County lacked sufficient "'empirical evidence'" to establish that the restrictions imposed here were substantially related to the important purpose of ensuring safety at commercial shooting facilities. Br. of Appellant at 33 (quoting 651 F.3d at 709).

We disagree with the Appellants and hold that the ordinance and the shooting after dark restriction are substantially related to the important government purpose of ensuring safety at commercial shooting facilities and withstand intermediate scrutiny.

*Ezell* is distinguishable and employed a less deferential form of intermediate scrutiny because the restriction at issue posed a heavier burden on the core Second Amendment right than the Jefferson County ordinance. 651 F.3d at 708-09. *McDonald*, apart from being the seminal case that incorporated the Second Amendment against the states, also invalidated the city of Chicago's near-universal prohibition on handgun possession. 561 U.S. at 791. The ordinance addressed by

the 7th Circuit in *Ezell* followed *McDonald*, and it imposed a permit requirement for handgun possession that compelled individuals to undergo one hour of training at a gun range. 651 F.3d at 689-90. At the same time, the City categorically banned all gun ranges from operating within the city. *Id.* Therefore, in that case, the range training right was inextricably linked to the right to bear arms, and the contested regulation imposed a severe burden on the core right to bear arms in self-defense. The court thus required the City to establish a "close fit between the range ban and the actual public interests it serves" in order to justify this regulation. *Id.* at 708-09.

But here, the right to possess a firearm is not conditioned on training at a commercial shooting facility. Nothing in ch. 9.41 RCW requires a purchaser of a firearm to complete training at a commercial shooting facility. Moreover, unlike the Chicago ordinance, here the ordinance and the restriction on shooting after dark do not constitute a complete ban on commercial shooting ranges. To the contrary, here the ordinance was designed with the express aim to "[p]romote the continued availability in the county of shooting facilities for firearm education, training, and practice in the safe use of firearms, and firearm sports, without prohibiting or expressly regulating the discharge of firearms." CP at 201. The individual ancillary right to train on a shooting range remains largely intact under this ordinance, which functions primarily to regulate the facility and its owners but not its patrons.

Consequently, to the extent that the permitting requirement for commercial shooting facilities and the restriction on shooting after dark burden the core right of self-defense via the ancillary range training right at all, the burden is minimal. *Ezell*, 651 F.3d at 704. If a law only minimally burdens the core Second Amendment right, it may be more easily justified. *Id.* at 708. As the court in *Ezell* described,

a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right.

*Id.* "'Empirical data'" is not required, and an ordinance may be justified "'based solely on history, consensus, and 'simple common sense.'" *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555, 121 S. Ct. 2404, 150 L. Ed. 2d 532 (2001) (internal quotation mark omitted) (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628, 115 S. Ct. 2371, 132 L. Ed. 2d 541(1995)) (upholding commercial speech restrictions).

Here, the ordinance and the restrictions on shooting after dark withstand intermediate scrutiny. The ordinance was created following a thorough deliberative process that included input from representatives of commercial shooting facilities operating in the county. The draft version of the ordinance was amended in response to oral testimony provided by a representative of the Sportsmen's Association at a public hearing before the BoCC. The provisions of the ordinance were largely made with specific reference to the NRA Range Source Book, which the *Ezell* court cited with approval when describing examples of narrower precautionary regulations that the City could have employed if it was concerned about safety at shooting ranges. 651 F.3d at 709-10. In addition, there were multiple complaints from different properties near the Sportsmen's Association of bullets being heard flying overhead since 2008. Finally, we again note the common understanding that guns are inherently dangerous and that shooting in lower light conditions might increase that danger. Given the minimal degree to which the permitting requirements and the

30

shooting after dark restriction burden the core individual right to self-defense, these justifications satisfy intermediate scrutiny in this case.

## V. APPELLANTS' MOTION TO DISMISS FOR MOOTNESS

On May 26, Appellants filed a motion to dismiss under RAP 18.9(c)(2), arguing that the appeal has been rendered moot by a subsequent amendment to the ordinance at issue in this case and by a pending federal lawsuit that similarly challenged the constitutionality of the ordinance. We deny this motion because this court could still provide effective relief on each claim raised by Appellants.[11] *See Wash. Off Highway Vehicle All. v. State*, 176 Wn.2d 225, 232, 290 P.3d 954 (2012) (holding that a court will generally dismiss a case as moot where the court can no longer provide effective relief.)

## CONCLUSION

We hold that the ordinance is a constitutionally valid exercise of the County's police power because the only provision of the ordinance that may conflict with RCW 9.41.290 is the shooting after dark restriction, but this restriction is exempt from preemption under RCW 9.41.300(2)(a).

---

[11] Fort Discovery's appeal is not rendered moot by either the amendment to the ordinance or by the pending federal lawsuit. First, because the new version of the ordinance still imposes uniform permitting requirements and contains a restriction on shooting after dark *at outdoor facilities*, JCC 8.50.240(2)(p), effective relief was theoretically available on each ground asserted by Appellants had this court agreed with the arguments they raised. Second, the pending federal lawsuit does not render this appeal moot because Fort Discovery has not identified any final judgment from the federal court that precludes this court from providing it effective relief. *See Columbia Asset Recovery Group, LLC v. Kelly*, 177 Wn. App. 475, 481-82, 312 P.3d 687 (2013) (holding that because the parties still had an existing interest in the outcome of the case, notwithstanding the pending federal court action, effective relief remained available.)

We further hold that the ordinance does not violate either article I, section 24 of the Washington Constitution or the Second Amendment of the United States Constitution.

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.